No. 42,840

The State of Kansas, *Appellee,* v. Myron R. Harkness, *Appellant.*

(370 P. 2d 100)

Opinion filed April 7, 1962.

*Jack E. Dalton,* of Jetmore, argued the cause, and was on the briefs for the appellant.

*Tom Smyth,* county attorney, argued the cause, and *William M. Ferguson,* attorney general, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal by defendant from a conviction of the offense of driving an automobile on the highways of the state of Kansas while his operator's license was suspended and revoked by the motor vehicle department of the state highway commission, and from the trial court's order overruling his motion for new trial.

On July 13, 1961, complaint was filed by the county attorney of Ness county charging that on or about June 17, 1961, defendant unlawfully drove and operated a certain motor vehicle, namely, a 1961 Ford country sedan bearing 1961 Kansas license number NS-2162, upon a public highway while his operator's license was suspended and revoked by the vehicle department of the state of Kansas.

A full jury trial was had and after the introduction of evidence, the trial court instructed the jury. We should perhaps pause to note that defendant's third and fourth contentions of error in regard to such instructions cannot be considered by this court on appeal for the reason that all of the instructions were not brought before us either in the abstract or in the counter abstract.

The jury returned a verdict of guilty and the trial court entered judgment accordingly under G. S. 1961 Supp., 8-262, and this appeal followed. The statute in pertinent part reads:

"(a) Any person who drives a motor vehicle on any public highway of this state at a time when his privilege so to do is canceled, suspended or revoked shall be guilty of a misdemeanor and upon conviction shall be punished by imprisonment for not more than six (6) months and there may be imposed in addition thereto a fine of not more than five hundred dollars ($500)."

The record before us explains how it was discovered that defendant had driven his automobile. He reported to his insurance company that while he had been driving his car approximately four miles east and seven miles south of Ness City the car caught fire and he wanted to file a claim to recover on his insurance policy. During the trial an exhibit marked No. 3 was admitted into evidence over the objection of defense counsel. One of the grounds for the objection was that the exhibit was improperly certified and defendant urges that same point here as reversible error. The exhibit now before us consists of six sheets of photostat reproductions of certain documents which have all been stapled together. The first, or top sheet, appears to be a letterhead of the motor vehicle department of the state highway commission dated July 24, 1961, and bears the heading "CERTIFICATE." In the body thereof L. A. Billings, superintendent of the motor vehicle department of the state highway commission certified that the attached photostat copies of "Letters of Revocation" and "Abstracts of Convictions" relative to Myron Russell Harkness were true and correct copies of the originals on file in the records of the department. His signature affixed thereto was verified by a notary public.

The second attached sheet of the exhibit had a state highway commission heading with "Vehicle Department" printed thereunder and beneath this the title read "ORDER OF SUSPENSION OF PRIVILEGES TO OPERATE MOTOR VEHICLE IN KANSAS" and in the body appeared the following:

"NUMBER 106

"To MYRON R. HARKNESS

"NESS CITY, KANSAS

"LICENSE SURRENDER ON PREVIOUS CHARGE"

The license was suspended on March 14, 1960, and could not be reinstated until September 30, 1961.

The third sheet was likewise on a state highway commission motor vehicle department form and was entitled, "ABSTRACT OF RECORD OF CONVICTION." It showed:

Date of offense, March 2, 1960
Date of hearing, March 14, 1960
Date of sentence, March 28, 1960
Nature of offense committed, driving while license suspended and revoked.

The signature of Clyde E. Burns, city judge of Ness City, was at the bottom thereof and this judge suspended and revoked the license of defendant (NS-1861) for the year 1960. We should perhaps explain at this point that sheet 2 in the exhibit is a copy of the notice sent to defendant based on this abstract of the record of conviction. Sheet 3 also contains a notation written in ink describing defendant's station wagon and then written beneath are these words: "Check pink sheet for registration."

The fourth sheet, like the second, appears to be a copy of a notice sent to Myron Russell Harkness wherein he was ordered to surrender his license because it had been revoked from September 30, 1959, due to his having been convicted in the police court of Eureka, Kansas, of driving under the influence of intoxicating liquor. This interpretation is further borne out by a letter dated October 12, 1959, (sheets 5 and 6) in regard to the same offense which had been sent from the motor vehicle department to Myron Russell Harkness. It showed that his driver's license had been revoked at that time and that under no circumstances could he drive his car until a new driver's license had been issued.

Defendant admits that under the certificate (sheet 3) the abstract of record of conviction was probably properly certified, as was the letter dated October 12, 1959, from the department to Harkness (sheets 5 and 6). It is apparent the sheets attached to the certificate are in reverse order to the sequence in which the incidents occurred.

Technically speaking, it would probably have been better for the superintendent of the motor vehicle department to have certified each sheet rather than stapling them together and making one overall certification. At least there could then have been no question whatsoever that the certificate covered each and every page. However, the five sheets were all properly stapled securely to the certificate and since the two orders of suspension of privileges to operate a motor vehicle (sheets 1 and 3) are notices to Harkness of the status of his operator's license, we are unable to say that their inclusion was in any way prejudicial to the substantial rights of the defendant in this case so long as the record actually certified to and the admissions of the parties was sufficient, competent, substantial

evidence for the jury to find and conclude that defendant's driver's license was suspended and revoked at the time he was driving the car immediately prior to the time it was destroyed by fire.

Defendant argues that because certain evidence was allowed in the case as to previous convictions, an inference of his guilt was created with the jury so as to prejudice the jury against him. We think this contention is not well taken for the reason that the crimes of which he had been convicted involved only infractions of the law causing his license to operate a motor vehicle on the highways of the state to be suspended or revoked. In order to show proper sequence of circumstances and conditions prior to the date defendant was charged, June 17, 1961, it was necessary to prove that his license had been revoked and for what reasons. This was part of the burden of the state in the prosecution of an offense of this kind and were we to follow defendant's theory, the statute (G. S. 1961 Supp., 8-262 [a]) would be made meaningless and therefore of no force and effect.

A current Missouri license in defendant's possession is of no benefit whatsoever to him under G. S. 1961 Supp., 8-258, which, in substance, provides that while a driver's license is suspended and revoked under our act, a resident or nonresident cannot use a driver's license issued by a foreign jurisdiction to operate a motor vehicle in this state.

We can find nothing in the record whereby defendant has sustained the burden which devolves upon him to make it affirmatively appear that his substantial rights have been prejudicially affected (G. S. 1949, 60-3317) and for that reason we are constrained to hold that the trial court did not err in any of the particulars complained of.

Judgment affirmed.

FATZER, J., dissenting: One of the defendant's specifications of error was that the district court erred in overruling his motion for a directed verdict and for discharge at the close of the state's case in chief. While it is with reluctance that I reach the conclusion the district court erred in the matter specified, I am of the opinion, for reasons hereafter stated, the motion should have been sustained and the defendant discharged.

The parties concede that the state was required to prove two essential elements of the crime charged: First, that the defendant

was in fact operating a motor vehicle upon a public highway in Ness county; and second, that while so operating the motor vehicle his license to operate the same was suspended and revoked by the motor vehicle department. (G. S. 1961 Supp., Ch. 8, Art. 2.)

There appears to be no question as to the sufficiency of the evidence to establish the first element of the offense, but in proof of the second element the state relied solely upon exhibit No. 3, which was received in evidence over the repeated objection of the defendant. In my opinion, that evidence was irrelevant, incompetent and prejudicial, and wholly failed to establish the second element of the offense; hence, the district court was not warranted in submitting the case to the jury.

Exhibit No. 3, consisted of five separate pages, each on the letterhead or printed forms of the motor vehicle department. The first page was entitled "CERTIFICATE," executed by the superintendent of the motor vehicle department, in which he certified that the following attached photostatic copies of

"Letters of Revocation
"Abstracts of Convictions"

pertaining to the defendant were true and correct copies of the original documents on file in that department.

It is assumed that exhibit No. 3 was admitted in evidence pursuant to G. S. 1949, 60-2854, and G. S. 1961 Supp., 60-2854a (see also G. S. 1949, 67-224), however, it is noted that the superintendent's certificate did not certify to the attached photostatic copy of "ORDER OF SUSPENSION OF PRIVILEGES TO OPERATE MOTOR VEHICLE IN KANSAS" entered April 12, 1960, and for that reason the instrument should not have been admitted in evidence. Moreover, all parts of the exhibit other than those certified to by the superintendent were likewise inadmissible (*MacRae v. Piano Co.*, 64 Kan. 580, Syl. ¶ 2, 68 Pac. 54; *State v. Hall*, 187 Kan. 323, 325, 356 P. 2d 678; *State v. Loyd*, 187 Kan. 325, 326, 356 P. 2d 825.)

Page 2 of the exhibit was entitled "ORDER OF SUSPENSION OF PRIVILEGES TO OPERATE MOTOR VEHICLE IN KANSAS and was an order entered by the superintendent on March 14, 1960, and approved by him on April 12, 1960, suspending the defendant's privilege to operate a motor vehicle as a result of his conviction on March 14, 1960, in the city court of Ness City on a charge of driving while his license was suspended. That order suspended the defendant's license from April 12, 1960, until September 30, 1961, or for a

period of one year, five months, and eighteen days, pursuant to G. S. 1961 Supp., 8-256 and 8-262, and was in effect on June 17, 1961, the date the defendant was alleged to have committed the offense in question.

Page 3 of the exhibit was entitled "ABSTRACT OF RECORD OF CONVICTION," and consisted of three paragraphs and the abstract of conviction. The first paragraph referred to G. S. 1949, 8-5,131, and recited that every justice of the peace or judge or clerk of a court shall within ten (10) days after the conviction or forfeiture of bail of a person charged with violation of the laws regulating traffic on highways, and the operation of vehicles thereon, or other provisions of the following section, or manslaughter or other felony in the commission of which a vehicle was used, shall immediately forward to the superintendent of the motor vehicle department, abstract of record of the person so convicted properly certified by such officer. The failure, refusal or neglect of any judicial officer to comply with any requirements of the act shall constitute a misconduct in office and shall be ground for removal therefrom. The second paragraph contained directions to the court in which a conviction was had to recover the operator's license from the person convicted of an offense requiring AUTOMATIC SUSPENSION of license, for the purpose of forwarding the license, together with the abstract, to the superintendent for suspension. The third paragraph stated that a judicial officer cannot suspend a license, he can only recommend such action, and that the superintendent under the law is the only person who can suspend a license. Thereafter followed the abstract of the defendant's conviction. It recited that he was charged in the city court of Ness City on March 2, 1960, with driving a motor vehicle while his license was suspended; that he entered a plea of guilty to that offense on March 14, 1960, and that on March 28, 1960, he was sentenced to the county jail for 30 days and fined one hundred dollars and costs. As will be noted, the abstract of conviction was the evidence upon which the superintendent acted in suspending the defendant's license for one year, five months and eighteen days, effective April 12, 1960, as set forth on page 2 of the exhibit.

Page 4 of the exhibit was an order entered and approved by the superintendent on October 12, 1959, entitled, "ORDER OF REVOCATION OF PRIVILEGES TO OPERATE MOTOR VEHICLE IN KANSAS" suspending the defendant's privilege to operate a motor vehicle as a result of

his conviction in the police court in Eureka, Kansas, for driving a motor vehicle while under the influence of intoxicating liquor. That order suspended the defendant's license from September 30, 1959, for one year, or until September 30, 1960 (G. S. 1961 Supp., 8-256 [a]). As will be noted, that order was in effect when the defendant was convicted in the city court of Ness City, but it had expired on June 17, 1961, when the offense here in question was alleged to have been committed.

The record indicates that the superintendent suspended the defendant's license for a six-months' period commencing April 12, 1960, but he also used the order entered October 12, 1959, as a result of the defendant's Eureka conviction, to extend the period of suspension of the defendant's license for one year, that is, for six months plus one year, or until September 30, 1961, pursuant to G. S. 1961 Supp., 8-262 (b), which provides:

"The department upon receiving a record of the conviction of any person under this section upon a charge of driving a vehicle while the license of such person was suspended shall extend the period of such suspension for additional like period. . . ."

Page 5 of the exhibit was a letter written to the defendant at Ness City on October 12, 1959, advising him of his conviction in Eureka on September 30, 1959; that pursuant to the statute now cited as G. S. 1961 Supp., 8-254, his license was revoked and was not subject to renewal or restoration except in the form of an application for a new license, which would not be granted for at least one year from the date of revocation (September 30, 1959); that he was required to surrender the registration certificate and license tags of all vehicles registered in his name as the owner unless proof of financial responsibility was immediately filed, and conditions for compliance with proof of financial responsibility were outlined. It further recited that under no circumstances should he drive a motor vehicle until a new driver's license had been issued and he had complied fully with the requirements showing proof of financial responsibility.

Time does not permit an extended review of our statutes relating to the suspension or revocation of an operator's or chauffeur's license. The two terms are defined in G. S. 1961 Supp., 8-234, and mean different things, but it is unnecessary here to differentiate between the two. Conviction of offenses described in G. S. 1961 Supp., 8-254, requires the motor vehicle department to forthwith

*revoke* the license upon proof of the conviction. Section 8-255 authorizes the department to *suspend* the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other evidence that the operator has committed an offense or has been convicted of the different types of offenses therein described. It further provides that upon suspending or revoking the license of any person the department shall immediately notify the licensee, in writing, and upon his request, shall afford him an opportunity for a hearing in the county of the licensee's residence as early as practicable within 20 days after receipt of the request. The department may either rescind its order of suspension or, for good cause shown, may extend the suspension of the license, or revoke the same. Section 8-256 deals with the period of suspension or revocation, and section 8-259 gives the person whose license has been suspended or revoked by the department, except where the revocation was mandatory under section 8-254, the right to appeal to the district court in the county wherein he resides and to take testimony and examine the facts whether he is entitled to his license, or it is subject to suspension or revocation. (*Lee v. State,* 187 Kan. 566, 358 P. 2d 765.) Section 8-260 deals with the unlawful use of a license, and section 8-262, the one under which the defendant was here charged, makes it unlawful to drive while the license is suspended or revoked.

It is obvious from the foregoing sections that the only manner in which an operator's or chauffeur's license may be suspended or revoked is by an order of the motor vehicle department. Hence, the only instrument in exhibit 3 which was competent to prove the second element of the offense charged was the "ORDER OF SUSPENSION OF PRIVILEGES TO OPERATE MOTOR VEHICLE IN KANSAS" approved April 12, 1960, and, as we have seen, it was not certified to by the superintendent and was inadmissible under the statutes and our decisions heretofore referred to. It should have been excluded on the basis of the defendant's objections.

The order of the superintendent of April 12, 1960, suspending the defendant's license was authorized by law (G. S. 1961, 8-255), and in the absence of an appeal to the district court pursuant to G. S. 1961 Supp., 8-259, it became final and binding upon the defendant until it expired, and was not subject to collateral attack in a subsequent criminal action for his driving a motor vehicle during the period of suspension of his license. In my opinion, the

"ABSTRACT OF RECORD OF CONVICTION" in Ness county on March 14, 1960, was irrelevant and prejudicial because it had served its purpose at the time of trial and was then immaterial. It was the evidence upon which the superintendent entered the order of April 12, 1960, suspending the defendant's license for the 17 months-plus period, and should not have been included in the abstract nor admitted in evidence. Likewise, the "ORDER OF REVOCATION OF PRIVILEGES TO OPERATE MOTOR VEHICLE IN KANSAS" entered October 12, 1959, suspending the defendant's license for one year from September 30, 1959, was immaterial. As previously indicated, that order had expired on the date here in question, although it formed the basis of the superintendent's action on April 12, 1960, extending the period of suspension of the defendant's license until September 30, 1961 (G. S. 1961 Supp., 8-262). Moreover, the letter of October 12, 1959, was highly prejudicial, immaterial and incompetent as to whether the defendant's license had been suspended or revoked on June 17, 1961.

At most, this record discloses that someone in the motor vehicle department gathered up some papers, stapled them together, and prepared a certificate for the superintendent to sign, which was wholly inadequate and improper for admission in evidence. The plain simple facts are that the certificate needed to only include the "ORDER OF SUSPENSION OF PRIVILEGES TO OPERATE MOTOR VEHICLE IN KANSAS" entered April 12, 1960.

Exhibit No. 3 was the only evidence tending to prove that the defendant's license was suspended or revoked, and because of its irrelevancy, incompetency, defective certification and prejudicial nature it should not have been admitted. The state's evidence failed to establish a prima facie case, and the defendant's motion for a directed verdict should have been sustained. I would reverse the judgment with direction to discharge the defendant (G. S. 1949, 62-1716).

SCHROEDER, J., dissenting: There is a break in the chain of evidence necessary to sustain a conviction in this case.

The link necessary to establish that the appellant was operating his vehicle, while his operator's license was suspended or revoked, was the "Order of Suspension of Privileges to Operate Motor Vehicle in Kansas," dated April 12, 1960. This order suspended his privilege to operate motor vehicles in Kansas from March 14, 1960,

and stated that *his license could not be reinstated before "9-30-61."*

While a copy of this order was attached to the certificate of the Superintendent of the Motor Vehicle Department, *it was not certified* as being one of the documents attached. As such, it was *incompetent* as evidence in the trial of the case over appellant's objection.

The complaint was filed July 13, 1961, charging appellant with an offense on the 17th day of *June, 1961.* The letter of revocation (certified) shows only revocation for one year for driving while under the influence of intoxicating liquor for conviction on September 30, 1959. The Abstract of Record of Conviction (certified) shows suspension of driver's license for offense of "Driving while license Suspended & Revoked," conviction 3-2-60, hearing 3-14-60, and sentence 3-28-60. No other material date is shown by this document. One year from 3-28-60 would be 3-28-61, long prior to the date of the alleged offense herein. (See, G. S. 1949, 8-256.) Thus, the order dated April 12, 1960, *was necessary in proof.*

It is respectfully submitted that the judgment of conviction should be reversed and a new trial granted.