## THE STATE OF KANSAS V. JAMES BLAKESLEY.

1. INFORMATION — *Counts Properly Joined.* Counts for grand larceny, and for unlawfully and feloniously receiving the stolen property described in the count for larceny, may be properly joined in the same information or indictment.

2. WITNESS — *Cross-Examination — No Contradiction.* Where a witness for the prosecution in a criminal cause, upon reëxamination, in explaining collateral matters drawn out upon his cross-examination, implicates the defendant in another offense than the one charged against him, and no objection is taken at the time to his statements, such answers, affecting collateral matters only, cannot afterward be contradicted by the witnesses for the defendant.

3. ———— *Conflicting Evidence; Verdict.* An examination of the record in this case shows that the evidence is greatly conflicting, but it cannot be said that the verdict is not supported by sufficient evidence.

*Appeal from Saline District Court.*

THE case is stated in the opinion.

*Lovitt & Norris,* for appellant.
*E. W. Blair,* for The State.

The opinion of the court was delivered by

HORTON, C. J.: On the 12th day of February, 1889, P. L. Gebhart made complaint before R. H. Bishop, a justice of the peace of the city of Salina, charging James Blakesley with stealing, taking and carrying away a gate, a water-tank and twenty pieces of lumber, all of the value of $32. A warrant was issued by the justice, and the defendant was arrested, and had his preliminary examination for the offense of larceny. He was bound over to appear at the next term of the district court to answer the charge. On March 4, 1889, the county attorney of Saline county filed an information in the district court of that county, charging Blakesley with stealing, taking and carrying away one gate of the value of seven dollars; one water-tank of the value of eight dollars and sixty cents, and twenty pieces of pine timber of the value of twelve dollars, the goods and chattels of Davis, Briggs and Gebhart. On the 18th day of March, 1889, the information was amended by adding a count thereto, charging the defendant with unlawfully and feloniously buying, receiving and taking into his possession the gate, water-tank and lumber described in the first count. Blakesley was tried March 23, 1889. He was acquitted of the charge of larceny, but convicted of buying, receiving and taking into his possession the property described in the information. He was adjudged to pay a fine of one hundred dollars, and also all the costs of the prosecution, and was ordered to be committed to the county jail until the fine and costs were paid. He appeals to this court:

I. It is claimed that the trial court committed material error in requiring the defendant to go to trial on the charge

of buying, receiving, and taking into his possession stolen property, without first having had a preliminary examination therefor. This question was raised on motion only, and not by a plea in abatement. It is not properly before us for determination.

"It is not necessary that the information itself should show that a preliminary examination had been first had before the filing of the information, nor that the information itself should show a legal cause for filing the same without such preliminary examination; and an information otherwise good, filed without such showing, will be held good on a motion to quash, or on a motion in arrest of judgment." (*The State v. Finley*, 6 Kas. 366.)

Even, however, if the motion to quash the information were treated as a plea in abatement, as the defendant was convicted of a misdemeanor only, and not a felony, he cannot urge as a ground for a new trial, or in arrest of judgment, that he did not have a proper preliminary examination. In *The State v. Watson*, 30 Kas. 281, the syllabus reads:

"Where a defendant is prosecuted for a felony which includes a misdemeanor of the kind above mentioned, and no proper preliminary examination has been had for either the felony or the misdemeanor, and the defendant files a plea in abatement because of such want of preliminary examination, and the court overrules the same, and the defendant is afterward tried and found guilty of the misdemeanor only, and is sentenced therefor, *held*, that no material error was committed."

II. It is next claimed that the court committed error in not requiring the state to elect on which count of the information it would go to trial, for the reason that the two counts stated separate and distinct offenses. The point is not tenable. Counts for grand larceny and for receiving stolen property may be properly joined. (*The State v. Daubert*, 42 Mo. 242; *Gandolpho v. The State*, 33 Ind. 439.)

III. It is further claimed that the court committed error in allowing a witness to testify that railroad ties and timber which the witness thought belonged to the Union Pacific

Railway Company were found upon the premises of the defendant, thereby attempting to show that the defendant had bought or received other stolen property. This evidence was wholly incompetent, and ought not to have been received by the court; but as the court withdrew the evidence from the consideration of the jury, the defendant has no material ground for complaint. (*The State v. Fooks*, 29 Kas. 425; *The State v. Furbeck*, 29 id. 535; *Whittaker v. Voorhees*, 38 id. 71.) Charles Williams gave similar evidence, but the record shows that one exception only was taken to what he testified about railroad ties and timber. The exception occurred in the following extract from his evidence:

"Q. While you were at Blakesley's, did you see any railroad ties about his place? A. I did, sir.

"Q. Where did you see them? [Objected to as incompetent, irrelevant, and immaterial; objection overruled, and defendant excepted.] A. I saw them on the north side of his field, in a straw stack."

Blakesley then proceeded to tell in detail all about the railroad ties and lumber, without other objection or exception, and no motion was made to strike out his answers, or to instruct the jury to disregard the same. Under these circumstances, the defendant is in no condition to complain of the testimony of Williams.

IV. It is also claimed that the court should have ruled out the answers of Charles Williams wherein he attempted to implicate Blakesley in a matter for which he had been arrested. In order to fully understand the point presented, it is necessary to quote from the testimony. Williams was a witness introduced upon the part of the prosecution. To affect his credibility, the counsel for the defendant asked him on cross-examination:

"Q. What are you charged with now; you are in jail? A. I am charged now with taking a plow, a spool of wire, and a scythe from Skelton's place; that is what I am charged with now."

Upon reëxamination of this witness, the counsel for the prosecution asked him:

"Q. How about this plow and wire business? Were you arrested the same day you were charged with it? A. No, sir; it was like this: I was working for the defendant, breaking colts, herding, stretching wire, setting posts, and digging holes; that was my business—everything.

"Q. Go on. A. I was working for Mr. Blakesley; he had been away that day, and there was no one there except myself; I was herding, watering, and tending to his hogs, and doing other work there; he came home about three-quarters of an hour by sun, and said: 'Have you driven the colts to-day?' and I said 'No,' that I had not time, that there was no one to attend to the things but me; he says, 'Those colts must be driven out every day, after the chores are done; drive them every day.' He says, 'You can drive them as far as Brookville, but drive them moderately, and in coming back come back by Skelton's place. I have bought a spool of wire there, and a scythe, and bring them and a plow along back with you,' and I did so. About forty rods from the house, Mr. King and his boy, a disinterested party to me, came out and says, 'Stop that.'

"Q. Is that the plow and spool of wire that you got that evening; is that what you are charged with stealing? A. Yes, sir."

No objection was made to the last questions or answers. No motion was made to strike out the answers, or to withdraw them from the consideration of the jury; therefore the court committed no error in receiving them, as no exception was taken at the time. Subsequently the counsel for the defendant attempted to introduce evidence to contradict these answers. Where a witness makes statements as to collateral matters upon cross-examination, or upon reëxamination without objection, his answers cannot be contradicted by other witnesses. Therefore the court properly rejected the impeachment testimony as to collateral issues. To prevent the evidence of Williams upon collateral matters from affecting prejudicially the defendant, the court gave the following instruction:

"The jury are instructed that the explanation given by the

witness Charles Williams, as to how he came to be in possession of the property he is charged with having stolen, is to be considered by you solely as affecting his credibility as a witness, and must not be considered in reference to or in any way affecting the defendant in this case."

V. It is finally claimed that the verdict in the case is not supported by sufficient evidence.   The testimony of the prosecution established that the property described in the information had been recently stolen from the parties therein named, and that soon thereafter it was found upon the premises and in the possession of the defendant.   The testimony of the defendant tended to show that Charles Williams, a witness for the prosecution, stole the property which was found at defendant's place; that Williams claimed to own the property; that he got it from a man by the name of Thompson, for whom he had worked; that defendant never at any time laid any claim to it or any part of it, and that the property was left in a public place, and exposed in the most public manner. It is well established that the verdict of a jury will not be disturbed if there is sufficient testimony to sustain it.   We cannot see from the record before us, that there is any failure of evidence.   It is evident that the jury did not believe all the witnesses offered by the defendant.   The trial judge, who had the opportunity of seeing all the witnesses and hearing them testify, declared by his judgment and sentence, that he thought the jury ought to have believed the testimony of the prosecution.   It is the province of the jury to settle all questions of fact, and when their verdict is sustained by the testimony and upheld by the judgment of the trial court, we ought not to interfere.

The judgment of the district court will be affirmed.

All the Justices concurring.