No. 44,625

THE STATE OF KANSAS, *Appellee*, v. ROBERT M. WALKER, *Appellant.*

(430 P. 2d 246)

Opinion filed July 17, 1967.

*Larry Kirby,* of Wichita, argued the cause, and *Russell Shultz,* of Wichita, was with him on the brief for appellant.

*Donald C. Vosburgh,* County Attorney, of Fredonia, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant, Robert M. Walker, was convicted by a jury on three counts charging him with driving a motor vehicle upon a highway (1) "without first obtaining a valid operator's or chauffeur's license," as required by K. S. A. 8-235; (2) "in such a manner as to indicate a willful and wanton disregard for the safety of persons or property," in violation of K. S. A. 8-531, and (3) "while under the influence of intoxicating liquor," contrary to K. S. A. 8-530. The defendant's motion for a new trial was overruled, and he has appealed.

The facts giving rise to the arrest and conviction of the defendant, follow: Officer Walter Wiltse, of the Kansas Highway Patrol, was regularly on duty, in a parked position four miles west of highway junction K-96 and K-39, in Wilson County. He received a radio report and proceeded eastbound on K-96 where he observed a green 1959 Mercury sedan, the defendant's car. There were four or five cars between him and the defendant's car, all traveling east. Officer Wiltse passed the four or five cars and caught up with the defendant and saw his car cross the center line of the

highway several times. On one particular occasion, the defendant's car crossed the center line on an incline or hill and in a "no passing" zone.

September 4, 1965, was Saturday of Labor Day weekend, and the traffic was fairly heavy; also, the surrounding terrain was "hilly." The Mercury was occupied by the defendant and his wife; the defendant was driving and his wife was sitting in the front seat with the window down, her right arm resting on the door and she was holding a drinking glass in her right hand. As Officer Wiltse put the "red light" on, she immediately emptied the contents of the glass out the window. The defendant slowly brought his car to a stop.

After both cars came to a stop, the defendant and Wiltse got out and approached one another behind the defendant's car. Wiltse testified at the trial that, at that time, the defendant was very unsteady on his feet and had a very strong odor of alcohol on his breath. The following exchange of words took place.

The defendant first asked in a very belligerent manner, "[w]hat do you want?" Wiltse told him he would like to see his driver's license and the defendant replied he had left the license at Fall River, Kansas. Wiltse then asked him whether he had any identification and the defendant arrogantly replied that he did not have to show him anything. Wiltse then advised the defendant he was under arrest for driving while under the influence of alcohol and advised him to stay put (to remain behind the defendant's car).

As Wiltse stuck his head in the driver's side of the defendant's car to search for an open container of liquor, the defendant ran up and grabbed Wiltse by the shoulder, pulled him out of the car, and asked him if he had a search warrant. The defendant was then forcibly placed under arrest and put in the patrol car. Wiltse continued his search and asked the defendant's wife if she had a driver's license. She showed him her license and said she did not have any identification for her husband. Wiltse testified that although she had a strong odor of alcohol on her breath, she was not "out of the way" and he allowed her to drive the Mercury to Fredonia.

Wiltse drove the defendant to Fredonia in the highway patrol car, and Mrs. Walker followed. En route to the county jail at Fredonia, Wiltse asked the defendant for his name again and again, but he refused to answer. On one occasion the defendant said, "[w]ell, just

say it's John Doe." Wiltse also asked whether he would take a blood alcohol test, and the defendant clearly stated, "[n]o, I won't take a blood test."

Both cars arrived at the county jail about the same time. As the defendant was being escorted from the patrol car to the county jail, he told his wife to get an attorney but to stay in the vicinity as he was going to need a witness. Mrs. Walker was advised she could not enter the jail with her husband since she was not under arrest. Because she attempted to block a jail doorway, Wiltse forcibly set Mrs. Walker aside and took the defendant inside the jail. The defendant was seated inside the jail and his wife remained at the entrance of the jail. The Walkers were "hollering" at one another and there was quite a bit of disturbance. On several occasions, the defendant jumped up and attempted to go to the jail door where his wife was. Wiltse told the defendant over and over to remain seated, and on one occasion, grabbed the defendant, tore his shirt, and forced him to sit down. Sheriff Hubert Harris, of Wilson County, was present during the latter part of the ruckus.

After having brought the defendant inside the jail, and while trying to keep him seated, Wiltse advised him that he was going to ask him some questions and that they would be used against him in court. The defendant was again asked for his name. He replied, "John Doe." In response to other questions, he either refused to answer, or replied, "not applicable" or "no comment." The defendant was also asked to take some coordination tests and to submit to a blood alcohol test. The county attorney's brief stipulates to the fact that the defendant had agreed to take any of the so-called sobriety tests so long as he could have an independent witness present, but because Wiltse refused to allow the presence of an independent witness, no test was ever given.

On March 12, 1966, the defendant was brought to trial. He pleaded not guilty, and a jury was duly impaneled. On the same day, he was found guilty as charged. The court sentenced the defendant to the county jail for 90 days, and ordered him to pay a fine of $300.

The defendant first contends there was not sufficient evidence to sustain a conviction of the charges made in Count I and Count II of the information. Count I charged the defendant with driving without a valid operator's or chauffeur's license, and Count II charged him with what is commonly known as reckless driving.

In determining whether there was sufficient evidence to sustain the verdict rendered, this court will consider only that evidence supporting or tending to support the findings made (*State v. Jeffers,* 161 Kan. 769, 173 P. 2d 245; *State v. Gates,* 196 Kan. 216, 410 P. 2d 264), and will not review or weigh conflicting evidence. (*State v. Blakesley,* 43 Kan. 250, 23 Pac. 570; *State v. McCoy,* 160 Kan. 150, 160 P. 2d 238.) In a criminal appeal, this court examines the evidence only to ascertain whether there is an entire absence of substantial evidence from which the jury might reasonably draw an inference of guilt. (*State v. McCoy,* supra; *State v. Shaw,* 195 Kan. 677, 408 P. 2d 650), and a verdict of guilty will not be disturbed if supported by substantial competent evidence.

The defendent contends the state failed to establish a *prima facie* case that he did not have a valid operator's or chauffeur's license, as required by K. S. A. 8-235. The parties concede the state was required to prove two essential elements of the crime charged: First, that the defendant was in fact operating a motor vehicle upon a public highway in Wilson County, and second, that while so operating the motor vehicle he did no without "first obtaining a valid operator's or chauffeur's license." The only evidence the state introduced was Wiltse's testimony that the defendant did not have a driver's license in possession. That evidence did not exclude every reasonable hypothesis the defendant had not been issued a valid operator's license by the State Motor Vehicle Department for the period during which he was driving. He was not charged with violating K. S. A. 8-244, which provides that "[e]very licensee shall have his operator's or chauffeur's license in his immediate possession at all times when operating a motor vehicle . . ." and that no person charged with violating the section shall be convicted if he produces in court an operator's or chauffeur's license theretofore issued to him and valid at the time of his arrest. We are of the opinion the state's evidence was insufficient to warrant the de-defendant's conviction of the charges contained in Count I, and the district court erred in overruling his motion for discharge. See, *State v. Harkness,* 189 Kan. 581, 370 P. 2d 100.

The defendant contends there was no evidence supporting the probability of an accident or any imminence of injury to persons or property, or any evidence to support the proposition he believed or had cause to believe his driving on the highway, under the facts and circumstances, might cause injury. The point is not well taken. There need be no accident in order for there to be reckless driving.

In *Elliott v. Peters,* 163 Kan. 631, 185 P. 2d 139, this court said recklessness is an indifference whether wrong is done or not—an indifference to the rights of others. See, *K. P. Rly. Co. v. Whipple,* 39 Kan. 531, 18 Pac. 730, and *Stout v. Gallemore,* 138 Kan. 385, 26 P. 2d 573. In *State v. Sullivan,* 58 N. D. 732, 227 N. W. 230, it was said there may be reckless driving without injury to others. Moreover, Wiltse's testimony that the defendant's automobile crossed the center line four or five times and went up a hill in a "no passing" zone on the wrong side of the highway for about 75 yards where the terrain was hilly and the traffic was heavy, and the defendant was under the influence of intoxicating liquor (*State v. Sullivan,* supra; *State v. Sisneros,* 42 N. M. 500, 82 P. 2d 74; 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 264, p. 816), tended to disclose the defendant's conduct was such as to evince disregard or indifference to consequences, and was sufficient for the jury to reasonably draw an inference of guilt.

In *State v. Brooks,* 187 Kan. 46, 354 P. 2d 89, a semi-trailer truck was northbound and had crossed over into the southbound lane of traffic, resulting in a collision between the truck and an oncoming car. The defendant contended the evidence was not sufficient to sustain a conviction of fourth degree manslaughter. In affirming the conviction, it was said the evidence was sufficient to prove a violation of G. S. 1949, 8-537, regulating driving upon the right side of highway, and of G. S. 1949, 8-431, now K. S. A. 8-531, relating to reckless driving. See, also *Hickert v. Wright,* 182 Kan. 100, 319 P. 2d 152.

In *State v. Sullivan,* supra, the defendant was prosecuted for reckless driving. The statute provided that any person who drives any vehicle upon a highway carelessly and heedlessly, in willful or wanton disregard of the rights or safety of others, so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving. It was said that reckless driving was to be based upon the violation of the rules of the road including the failure to stay upon the right side of the righway as well as the failure to maintain a careful and prudent speed. While one may observe the speed limit, he may still be guilty of reckless driving by constantly zigzagging from one side of the highway to the other thus endangering the lives and property of others.

The defendant further contends the district court erred in allowing the prosecution to present testimony regarding conversations

and answers resulting from the custodial interrogation without first advising the defendant of his constitutional rights, and cites and relies upon *Miranda v. Arizona,* 384 U. S. 436, 16L. Ed. 2d 694, 86 S. Ct. 1602. The *Miranda* decision was rendered on June 13, 1966, four months after the trial of the instant case. In *Johnson v. New Jersey,* 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772, it was held the *Miranda* decision was applicable only to those cases where the trial began after the date of the decision. See, also, *Addington v. State,* 198 Kan. 228, 424 P. 2d 871. Moreover, the record discloses the defendant was well aware of his rights as evidenced by his complete and continued refusal to answer any questions asked by the interrogating officer. The only answer he made to any question was to finally give his proper name. That, in itself, is no violation of any constitutional right.

Likewise, Wiltse's request that the defendant submit to a blood alcohol test is not a violation of his constitutional rights. In *Schmerber v. California,* 384 U. S. 757, 16 L. Ed. 908, 86 S. Ct. 1826, the Supreme Court of the United States reaffirmed the *Breithaupt* case (*Breithaupt v. Abram,* 352 U. S. 432, 1 L. Ed. 2d 448, 77 S. Ct. 408, holding the taking of blood from an unconscious defendant to be constitutional), and said there was no violation of the privilege against self-incrimination, or a violation of search and seizure, to compel an accused to submit to a blood alcohol test despite his refusal, on the advice of counsel, to take the test. It was also said the taking of the blood alcohol test was not a denial of the right to counsel.

Other contentions made by the defendant present no justiciable questions and its is unnecessary to extend this opinion by discussing them.

The judgment of the district court is reversed with respect to the defendant's conviction on Count I, and the sentence and fine imposed thereunder are directed to be set aside. The defendant's conviction on the charges contained in Counts II and III is affirmed in all respects.

It is so ordered.