**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Karl A. McINTOSH, Defendant/Appellant.**

No. 96–40076–01–SAC.

United States District Court,
D. Kansas.

Aug. 6, 1997.

Timothy J. Henry, Office of Federal Public Defender, Wichita, KS, for Karl A. McIntosh.

Kris R. Poppe, U.S. Atty., Fort Riley, KS, for U.S.

### MEMORANDUM AND ORDER [1]

CROW, Senior District Judge.

 On October 3, 1996, Karl A. McIntosh was convicted of reckless driving [2] and failing to show proof of registration in violation of the Assimilative Crimes Act, 18 U.S.C. § 13 [3] at a trial before the Honorable John Thomas Reid, United States Magistrate Judge. The offenses occurred on July 4, 1996, while McIntosh was driving a motorcycle on Fort Riley, Kansas, a federal military installation within the exclusive jurisdiction of the United States. For his reckless driving conviction, McIntosh was sentenced to five days in jail and placed on probation for a term of six months. The Magistrate Judge granted McIntosh's request for a stay of execution of sentence.

McIntosh timely appeals his conviction for reckless driving. First and foremost, McIntosh contends that this case must be remanded for a new trial based upon the fact that no transcript of a "critical" portion of his trial exists. According to McIntosh, the recording system utilized at Fort Riley apparently malfunctioned and did not capture "the entire testimony of a key defense witness (Jennifer McKeen)." According to McIntosh's brief, McKeen's testimony corroborated his own testimony and directly conflicted with the government's lone witness, specialist Jason L. Smith, the arresting officer. Assuming that the court nevertheless evaluates the sufficiency of the evidence, McIntosh contends that there is insufficient evidence to support his conviction for reckless driving.

The government responds, arguing that under Fed. R.App. P. 10(c), McIntosh was obligated to file a motion to supplement the record with a statement of evidence. The government contends that because it is McIntosh's obligation "to insure that the record is complete, he cannot take advantage of missing portions of the record." The government contends that "the main thrust of McKeen's testimony was to attack the credibility of Specialist Smith, specifically concerning his testimony that oncoming vehicles were forced into the emergency lane by appellant's actions." Because credibility calls are the providence of the factfinder, the government implicitly suggests that the lost portion of the transcript is largely irrelevant to this court's appellate review.

In his reply, McIntosh again argues that the lost portion of the appellate record is a structural defect requiring remand for retrial. McIntosh contends that it would be useless and futile to require his attorney "to recreate from his rather incomplete and faded memory a statement of facts that would most certainly be objected to by the government." Based upon the lapse of over two months between the completion of the trial and the discovery that the record is incomplete, McIntosh contends that such a reconstruction would be unrealistic if not impossible. In the event the court "believes an attempt at compliance with Rule (10)(c) of the Federal Rules of Appellate Procedure must be made, counsel for appellant request this Court to permit appellant to attempt to supplement the record with its recollection of this witness' testimony."

### Lost Transcript

Although the court and its staff strive vigilantly to compile a complete and accurate record and to safeguard it from harm, a system reliant on human beings (and/or the devices made by human beings) will inevitably be imperfect. Unfortunately transcripts or portions of transcripts of proceedings have on rare occasions been lost, misplaced, de-

---

**1.** After examining the briefs and appellate record, this court has determined that oral argument would not materially assist the determination of this appeal. The case is therefore ordered submitted without oral argument.

**2.** Two other charges, illegal passing and failing to obey a traffic signal were dismissed by the Magistrate Judge because they "merged" into the reckless driving charge. Trial Transcript at 122.

**3.** "The purpose of the Assimilative Crimes Act is to provide a method of punishing a crime committed on government reservations in the way and to the extent that it would have been punishable if committed within the surrounding [state] jurisdiction." *United States v. Sain,* 795 F.2d 888, 890 (10th Cir.1986). "The Act fills in gaps in federal criminal law by providing a set of criminal laws for federal enclaves." *Id.*

stroyed, or, as in this case, are unavailable due to unexplained mechanical failure. *See United States v. Pace,* 10 F.3d 1106, 1125 n. 18 (5th Cir.1993) (collecting examples of cases in which transcripts of judicial proceedings are unavailable), *cert. denied,* 511 U.S. 1149, 114 S.Ct. 2180, 128 L.Ed.2d 899 (1994).

▆▆ "A criminal defendant has a right to a record on appeal that includes a complete transcript of the proceedings at trial." *United States v. Neal,* 27 F.3d 1035, 1043–44 (5th Cir.) (citing *United States v. Margetis,* 975 F.2d 1175, 1176 (5th Cir.1992); *United States v. Selva,* 559 F.2d 1303, 1305 (5th Cir.1977)), *cert. denied,* 513 U.S. 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1994). However, "due process does not automatically require reversal when a defendant is denied a full verbatim trial transcript." *United States v. Brand,* 80 F.3d 560, 563 (1st Cir.1996). The federal courts generally agree that to obtain reversal and a new trial the defendant must show that the absent portions of the record specifically prejudice his appeal. *See id.; Neal,* 27 F.3d at 1043–44 ("Where a portion of the transcript is missing and the defendant is represented by the same attorney at trial and on appeal, reversal is required only if the defendant can 'show that failure to record and preserve the specific portion of the trial proceedings visits a hardship upon him and prejudices his appeal.' ") (quoting *Selva,* 559 F.2d at 1305).[4]

▆▆ The impact of lost or missing transcripts on a defendant's conviction is dependent upon the facts and circumstances of each case. In *United States v. Smaldone,* 583 F.2d 1129 (10th Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979), the Tenth Circuit discussed the issue

of lost transcripts and the requirements imposed by Fed. R.App. 10(c)[5]:

> The [defendants'] argument seems to be that simply because the court reporter lost her notes, a reversal is required. Such does not necessarily follow. Rule 10(c), Fed. R.App. P. clearly contemplates that there may be occasions where a transcript is, for one reason or another, unavailable and provides a method for reconstructing the missing record. In the instant case, the provisions of Rule 10(c) were complied with, to the end that the record before us does contain a narrative account of the testimony of all three witnesses. Nothing contained therein would necessitate a reversal. Although in a different factual context, the Supreme Court in *Draper v. Washington,* 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963), has held that alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. In the instant case we have an "equivalent report." To the same effect, *see Morgan v. Massey,* 526 F.2d 347 (5th Cir.1976).

*Id.* at 1133. *See Merritt v. Hawk,* 114 F.3d 1198 (10th Cir.1997) (Table; available on Westlaw at 1997 WL 303665) ("[T]he Federal Rules of Appellate Procedure recognize that there may be occasions in which official transcripts are unavailable, but other—albeit less reliable—evidence of proceedings may be obtained."); *United States v. Mobile Materials, Inc.,* 881 F.2d 866, 868–69 (10th Cir.1989) ("Fed. R.App. P. 10(c) allows for such a statement to be included as part of the rec-

---

4. The Fifth Circuit has recognized a different standard for determining whether reversal is required when the defendant is represented by different counsel on appeal than he was at trial. *See Selva,* 559 F.2d at 1306 (defendant represented by new counsel on appeal may obtain reversal for lack of a verbatim transcript by showing the missing portion of the transcript is "substantial and significant"). The majority of courts have, however, rejected this distinction. *See Brand,* 80 F.3d at 563. In the context of this appeal this discussion is academic as McIntosh is represented in this appeal by the same attorney who represented him at trial.

5. Rule 10(c) provides:

> Statement of the Evidence or Proceedings When No Report Was Made or When the Transcript is Unavailable. *If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.*

ord on appeal when a transcript is unavailable."), *cert. denied,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990).

■ In this case, McIntosh claims that McKeen's testimony is critical to his case because it impeaches Specialist Smith's testimony. Yet in the next breath McIntosh claims that his memory and the memory of his counsel are collectively incapable of reconstructing even a summary of McKeen's testimony. Although McIntosh claims that the missing transcript is a structural defect compelling a new trial, *see generally United States v. Wiles,* 102 F.3d 1043 (10th Cir.1996) (en banc) (listing examples of structural defects), *rehearing granted in part, denied in part,* 106 F.3d 1516 (10th Cir.1997), *petition for cert. filed,* 65 U.S.L.W. 3783 (May 12, 1997), based upon the paucity of his proffer regarding McKeen's testimony, the court is unable to reach such a conclusion. Under these circumstances, McIntosh has failed to demonstrate that his appeal has been prejudiced. Consequently, the missing transcript does not necessitate a reversal for new trial. The court will evaluate his appeal based upon the available record.

### Sufficiency of the Evidence: Standard of Review

In reviewing the sufficiency of the evidence, the court must

> view the evidence in the light most favorable to the government in order to determine whether all of the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, 'convinces us that a rational factfinder could reasonably have found' the appellant guilty of the crime charged beyond a reasonable doubt.

*United States v. Chavez–Palacios,* 30 F.3d 1290, 1293–94 (10th Cir.1994) (*quoting Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979)). "[T]he evidence presented to support the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *United States v. Sanders,* 928 F.2d 940, 944 (10th Cir.) *cert. denied,* 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991) (internal quotations omitted). In determining whether there was in fact some evidence in the record to

support the jury's verdict, *see United States v. Hoenscheidt,* 7 F.3d 1528, 1530 (10th Cir.1993), we review the record de novo. *See United States v. Grimes,* 967 F.2d 1468, 1472 (10th Cir.), *cert. denied,* 506 U.S. 927, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). Moreover, "an appellate court may not decide the credibility of witnesses as that is the exclusive task of the fact trier.... Once the jury has spoken, this court may not reweigh the credibility of the witnesses." *United States v. Youngpeter,* 986 F.2d 349, 352–53 (10th Cir.1993); *see also United States v. Uresti–Hernandez,* 968 F.2d 1042, 1045 (10th Cir.1992) ("Credibility determinations are for the jury, not the appellate court"). By viewing the evidence in the light most favorable to the government, we necessarily assume the jury found the government's evidence credible.

*United States v. Torres,* 53 F.3d 1129, 1133–34 (10th Cir.), *cert. denied,* 515 U.S. 1152, 115 S.Ct. 2599, 132 L.Ed.2d 845 (1995).

### Sufficiency of the Evidence

Assuming that the court proceeds to the merits of his case, McIntosh contends that the evidence presented at trial was insufficient to support his conviction for reckless driving. The government responds, arguing that there was sufficient direct and circumstantial evidence for the magistrate judge to find McIntosh guilty of reckless driving.

In announcing his decision from the bench, Magistrate Judge Reid stated:

> Based upon the testimony at the trial, the Court finds that the defendant was speeding well in excess of the posted speed limit and illegally passing a number of vehicles. The Court also finds credible the officer's testimony that a number of cars, both oncoming and the defendant's—traveling in the same direction as the defendant's vehicle had to pull on to the shoulders when the defendant engaged in the illegal passing. Such conduct by other drivers clearly demonstrates that the defendant clearly disregarded the safety of persons and/or property. In addition, the fact that the defendant was engaged in conversation with drivers of other vehicles in the same

lane of traffic at a speed of up to 65 miles per hour shows a wanton disregard for the safety of persons or property. The Court, therefore, finds the defendant guilty of reckless driving. The charge of illegal passing and failure to obey a traffic control device merge into the reckless driving charge and are accordingly dismissed. The Court also, however, finds the defendant guilty of driving on an expired registration.

Trial Transcript at 121–22.

■ Based upon its review of the facts contained within the available portions of the transcript, a rational factfinder could easily have concluded that there was sufficient direct and circumstantial evidence to sustain McIntosh's conviction for reckless driving. K.S.A. 8–1566(a) defines reckless driving as driving a vehicle with a "willful or wanton disregard for the safety of persons or property." Specialist Smith recounted events clearly evidencing "willful or wanton disregard for the safety of persons or property." Specialist Smith testified that he observed McIntosh enter Huebner Road after failing to stop at a stop sign. Huebner Road has a posted speed limit of 45 miles per hour and is marked with a double yellow line from the point where McIntosh entered the road to the edge of the military reservation at Ogden, a distance of approximately two and one half miles. Specialist Smith attempted to stop McIntosh by activating his siren and patrol lights. McIntosh accelerated and continued eastbound. McIntosh then passed a single car, then a group of three cars and another group of two cars. Specialist Smith estimated that McIntosh was driving at 65 miles per hour. While passing cars, McIntosh "would cover himself by dipping in between the cars that he was going around cutting in front of the, back out, in front back out, and then finally in front of the third car. Those vehicle were as he would end up in front of them would each dip into the right hand emergency lane." On-coming vehicles veered out of McIntosh's way and into the emergency lane as he illegally passed vehicles traveling in his own direction. Eventually McIntosh pulled over to the side of the road before leaving the base.

■ The fortuity that no one was actually injured or killed does not preclude McIntosh's conviction. The court does not believe that actual carnage must occur in order for a person to be convicted of violating K.S.A. 8–1566(a). *See State v. Walker,* 199 Kan. 508, 511, 430 P.2d 246 (1967) ("There need be no accident in order for there to be reckless driving."), *cert. denied,* 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 870 (1968). " '[T]o obtain a conviction for reckless driving under 8–1566 it is only necessary to establish that the vehicle was driven in willful or wanton disregard for the safety of others; in other words, under circumstances that show a realization of the imminence of danger and a reckless disregard or complete indifference for the probable consequences of such conduct.' " *State v. Brueninger,* 238 Kan. 429, 435, 710 P.2d 1325 (1985) (quoting *State v. Mourning,* 233 Kan. 678, 681–82, 664 P.2d 857 (1983)).

The fact that McIntosh's motorcycle is a "high performance cycle" and that McIntosh has had experience racing similar machines is of little consequence as it plainly provided no solace to persons driving vehicles who were required to veer into the emergency lane for their own safety. McIntosh's conduct created a serious hazard to all persons traveling on Huebner Road on July 4, 1996. Even by his own account, McIntosh was at one time maintaining a conversation with friends traveling in the same direction as he whipped down the highway.

■ As he did to the magistrate judge, McIntosh again argues that it is improper to consider all of his traffic infractions in combination in determining that he was driving recklessly. As the government suggests, this argument defies common sense. In determining whether the defendant is guilty of reckless driving, it is clearly appropriate to consider all of the facts and circumstances concerning his conduct, including the manner and degree of other violations of the law (e.g., passing in a no passing zone, speeding, etc ... ). During the trial, Magistrate Judge Reid posited the following question to defense counsel: "Can you conceive of a situation where one would be .... guilty of reckless driving but has not committed some other offense?" Trial Transcripts at 56. Defense counsel had no valid response at that time and essentially offers none to this court.

**1334**

In *Walker,* the Kansas Supreme Court implicitly rejected the argument McIntosh advances here: "It was said [in *State v. Sullivan,* 58 N.D. 732, 227 N.W. 230 (1929) ] that reckless driving was to be based upon the violation of the rules of the road including the failure to stay upon the right side of the righway (sic) as well as the failure to maintain a careful and prudent speed. While one may observe the speed limit, he may still be guilty of reckless driving by constantly zigzagging from one side of the highway to the other thus endangering the lives and property of others." 199 Kan. at 512, 430 P.2d 246.

McIntosh's conviction is supported by sufficient evidence. McIntosh has not demonstrated that the absence of a transcript of McKeen's testimony prejudices his appeal.

IT IS THEREFORE ORDERED that McIntosh's conviction is AFFIRMED. This case is remanded to the magistrate judge for execution of the sentence imposed.