NOT DESIGNATED FOR PUBLICATION

Nos. 125,929
125,930

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEANGELO AVERY DOBBS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; JOHN J. BRYANT, judge. Submitted without oral argument. Opinion filed February 13, 2026. Affirmed.

*Jennifer Roth*, of Kansas Appellate Defender Office, for appellant.

*Sherri L. Becker*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.

PER CURIAM: DeAngelo Avery Dobbs was convicted of felony fleeing or attempting to elude a police officer following a bench trial. Dobbs appeals, arguing the evidence was insufficient to support his felony level conviction and only supported the misdemeanor crime of fleeing or eluding a police officer. Viewing the evidence as the legal standards require, we find the evidence sufficient to support his conviction and affirm.

1

PROCEDURAL AND FACTUAL BACKGROUND

Two cases were consolidated on appeal, case No. 17 CR 61 (appellate case No. 125,929) and case No. 19 CR 241 (appellate case No. 125,930). A brief discussion of the separate cases is necessary before addressing the merits of this appeal.

*Consolidation and Waiver*

In the 2017 case, Dobbs pleaded guilty to one count of criminal possession of a firearm by a felon. The district court sentenced him to 18 months of probation with an underlying prison term of 18 months. In December 2022, the district court revoked Dobbs' probation and ordered him to serve the underlying prison term. Dobbs appealed the revocation of his probation.

In the 2019 case, Dobbs was convicted of felony fleeing or eluding based upon the facts recited in detail below. Following this conviction, he filed an appeal. After difficulties obtaining transcripts common to both cases on appeal, Dobbs sought to consolidate the two appellate cases, arguing that although the two cases did not share common issues, they shared transcripts. We granted the consolidation of the two cases and proceeded under case No. 125,929.

On review of the briefs in the consolidated appeals, we note that Dobbs raises no claim regarding his probation revocation in the 2017 case, as he satisfied his sentence and postrelease supervision in July 2024. Because the probation revocation appeal was neither briefed nor argued, it is considered waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). We proceed to examine only Dobbs' claim regarding his felony fleeing and eluding conviction, beginning with the circumstances forming the basis of that case.

*Dobbs Evades Law Enforcement*

The events leading to Dobbs' pertinent conviction were established during the trial on his charge of fleeing or attempting to elude a police officer and engaging in reckless driving as defined by K.S.A. 8-1566, in violation of K.S.A. 2018 Supp. 8-1568(b)(l)(C), (c)(2), a severity level 9, person felony. Dobbs waived his right to a jury trial, and the case proceeded to a bench trial. During the bench trial, the State presented evidence through its sole witness, Atchison County Detective James Stuart.

On October 24, 2018, Detective Stuart was an Atchison County Sheriff's Deputy on duty, dressed in his uniform, driving a marked patrol vehicle. At approximately 11:30 a.m. on that mostly sunny day, while exiting a local Casey's convenience store parking lot in his patrol vehicle, he saw a car waiting to enter the same parking lot. As the car turned into the store parking lot, Detective Stuart recognized Dobbs as the driver, as he had known Dobbs since 2016 and could recognize him by face and voice. Dobbs had no passengers.

At that point, Detective Stuart began to turn his patrol vehicle around and called Atchison County communication center to confirm his belief that Dobbs had an active warrant. Meanwhile, Dobbs turned into the alley adjacent to Casey's while Detective Stuart was making a U-turn. Detective Stuart heard Dobbs' car "drop down a gear, the engine accelerate," and "[g]ravel kind of was thrown a little bit." As Dobbs' car accelerated into the alley, Detective Stuart turned on his lights and advised dispatch that the vehicle was taking off. He began pursuing the eastbound vehicle and activated his siren about 50 yards into the pursuit.

Although Detective Stuart admitted that he did not use a radar gun to establish Dobbs' speed, he estimated that Dobbs was traveling "at least 60 miles an hour" through the alley. Detective Stuart believed the speed limit in the alley was 30 miles an hour. He

acknowledged that although there was a duty to yield to oncoming traffic, the alley had no stop or yield signs.

Detective Stuart continued to pursue Dobbs down the alley, first crossing 16th Street, then 15th and 14th. At 16th Street, the officer did not recall there being traffic. He testified that Dobbs did not stop when he crossed 16th or 15th Streets. At this point, Detective Stuart testified he was still fairly close to Dobbs' vehicle, but Dobbs gained distance at both the intersections at 16th and 15th streets due to the officer slowing down at each intersection. The officer testified he initially maintained pace with Dobbs and only fell behind when slowing "significantly," at intersections with retaining walls—16th and 14th Streets. Detective Stuart noted that when crossing the alley at the 16th street intersection, it has a concrete retaining wall to the north "that kind of limits your visibility." Also, at 14th Street, there are concrete retaining walls on both the north and south sides of the alley, which "significantly reduces your visibility, so [Stuart] would have slowed down significantly there as well."

Detective Stuart testified about the terrain in the alleys, describing the roadway as "[l]ightly graveled," with "lots of potholes," some of them "substantial." The officer said the alleys were narrower than a standard street but wide enough to allow traffic to move in both directions. He believed all the alleys had inclines. According to Detective Stuart, the alley immediately behind the store inclines in spots. Likewise, between 15th and 14th Streets, he believed the alley had a downward incline, but he could not recall the terrain between 15th and 16th Streets.

When Detective Stuart crossed 15th Street, he recalled seeing a single car stopped in the street. He was unsure if the car stopped because of his lights and sirens or if the car had already been stopped to avoid a collision with Dobbs, who was not stopping at intersections. He did not recall how close the car was to the intersection of the alley and 15th Street when he approached. Once Dobbs crossed 15th Street, Detective Stuart lost

4

sight of him. Detective Stuart confirmed that he did not know what happened at the intersection of the alley and 14th Street, as Dobbs' car was out of his view. As Detective Stuart searched the area for Dobbs, he questioned two pedestrians but ultimately completely lost Dobbs. A short time later, the Atchison Police Department notified Detective Stuart that they located the abandoned, running car in the back of a residence, unoccupied. No video evidence existed, as the officer had no dash camera in his car and did not turn on his body camera.

After Detective Stuart testified, the State rested, and the defense called Tori Downing to testify. Downing had three children with Dobbs, lived in Atchison, and owned the vehicle Dobbs drove the date of the incident. Her testimony focused on the vehicle, Dobbs' identity, and whether the evidence placed him in the vehicle during the incident.

During closing arguments, defense counsel contended that the State had not proven Dobbs was the driver, but, even if he was, the State failed to prove beyond a reasonable doubt that Dobbs was driving recklessly. Dobbs cited *State v. Remmers*, 278 Kan. 598, 102 P.2d 433 (2004), and argued that the Kansas Supreme Court defined reckless driving in that case and discussed that courts should consider all circumstances and the presence or absence of the defendant's conduct.

The defense argued that the investigation was lacking, and that while the vehicle was allegedly speeding more than 30 miles per hour in an alley, this alone is not reckless driving. He argued that the other alleged traffic infractions—that the car failed to stop or yield at the 15th and 16th Street intersections—also did not establish recklessness, as there was no testimony that the driver needed to yield or that the vehicle came close to hitting other cars or pedestrians. According to defense counsel, "it's implicit within the reckless driving statute that the State has to show that there was an imminent danger to

5

property or other individuals, and I don't think that was established here today." The district court took the matter under advisement.

About a week later, the judge issued its ruling from the bench:

"All right. Well, I did go back and review the evidence. 2019 CR 241, fleeing or attempting to elude a police officer, Court does find the defendant guilty. I did go back and review reckless driving as well.

"I think the testimony was that he was traveling at least the speed limit, if not at a higher rate of speed, failing to yield as he exited the alleyways, which were limited in sight pursuant to the testimony of the officer."

Finding the evidence also supported Dobbs was, in fact, the person in the fleeing vehicle, the district court found Dobbs guilty of fleeing or attempting to elude a police officer under K.S.A. 2018 Supp. 8-1568(b)(l)(C), (c)(2), a severity level 9 person felony. Dobbs filed a motion for downward dispositional departure, which the district court denied. In December 2022, the district court sentenced Dobbs to 14 months in prison and 12 months of postrelease supervision.

Dobbs timely appeals.

ANALYSIS

Two threshold concerns about Dobbs' claims bear brief mention. First, although based on the timing of his sentencing Dobbs likely has completed his imposed sentence, we note that his claim is not moot. Dobbs challenges the sufficiency of evidence in this appeal. A challenge to the sufficiency of the evidence is not moot because a reversal of the conviction would have real consequences: it would reduce his criminal history and could entitle him to refunds of fines or court costs. See *State v. Moeller*, 318 Kan. 860, 874, 549 P.3d 1106 (2024) ("[A] potential finding of insufficient evidence would be the

6

first step toward exonerating [defendant], and under . . . our mootness doctrines, exoneration remains a 'case or controversy' even after death.").

Second, we need not address preservation, because a criminal defendant is not required to challenge the sufficiency of the evidence at trial to preserve the issue for appeal—although Dobbs arguably did. *State v. Pepper*, 317 Kan. 770, 776, 539 P.3d 203 (2023). For these reasons, we proceed to address the merits of his claims.

*The Evidence Was Sufficient to Allow a Rational Fact-Finder to Conclude that Dobbs Was Guilty of Reckless Driving Beyond a Reasonable Doubt*

Dobbs contends the evidence in his case is insufficient to support his felony level conviction, asserting that it only supports the misdemeanor version of fleeing or eluding a police officer. He challenges the district court's finding on reckless driving claiming its statement "he was traveling at least the speed limit, if not at a higher rate of speed, failing to yield as he exited the alleyways, which were limited in sight pursuant to the testimony of the officer," is insufficient under K.S.A. 2018 Supp. 8-1568(b)(1)(C). Dobbs asserts there was no evidence of other traffic or pedestrians in the alleys, and only a single car stopped on 15th Street; however, the deputy "could not recall how close the car was to the alley, so it is unknown whether Mr. Dobbs would have even been required to yield to it." Also, there were no passengers in his vehicle, no property damage, no hazardous conditions, nor did he run red lights or stop signs, drive over curbs, cross lanes of traffic, or drive in the dark. Ultimately, according to Dobbs, there was no "'imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger.'"

The State counters that Dobbs' conduct went beyond mere inattentive driving, amounting to a willful or wanton disregard for the safety of persons or property, and thus constitutes reckless driving. The State maintains that when Dobbs turned into the alley

behind the store, he immediately accelerated, reaching speeds over 60 miles per hour around lunchtime. According to the State, the alley was significantly hazardous because it was narrow, had deep potholes, included an incline, and crossed several streets, two with limited visibility due to retaining walls. The State argues Dobbs drove recklessly when he failed to slow down during intersections and continued to speed through the alley, disregarding any person or thing that could have been in his way.

*Applicable Legal Standards*

We must first identify the crime the State accused Dobbs of committing. The district court convicted Dobbs of fleeing or attempting to elude a police officer under K.S.A. 2018 Supp. 8-1568(b)(1)(C), (c)(2). As defined, subsection (c)(2) provides that reckless driving elevates the offense to a severity level 9 person felony:

> "(b) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, and who:
>
> (1) Commits any of the following during a police pursuit: (A) Fails to stop for a police road block; (B) drives around tire deflating devices placed by a police officer; (*C*) *engages in reckless driving as defined by K.S.A. 8-1566*, and amendments thereto; (D) is involved in any motor vehicle accident or intentionally causes damage to property; or (E) commits five or more moving violations; or
>
> (2) is attempting to elude capture for the commission of any felony, shall be guilty as provided in subsection (c)(2).
>
> (c)(1) Violation of subsection (a), upon a:
>
> (A) First conviction is a class B nonperson misdemeanor;
>
> (B) second conviction is a class A nonperson misdemeanor; or
>
> (C) third or subsequent conviction is a severity level 9, person felony.
>
> (2) *Violation of subsection* (*b*) *is a severity level 9, person felony.*"
>
> (Emphases added.) K.S.A. 2018 Supp. 8-1568(b), (c).

8

So, under the facts of this case, the State must have proven beyond a reasonable doubt that Dobbs engaged in reckless driving, defined as driving a vehicle "in willful or wanton disregard for the safety of persons or property" under K.S.A. 2018 Supp. 8-1566(a).

The issue on appeal is whether there was sufficient evidence of reckless driving to support Dobbs' felony fleeing or attempting to elude a police officer conviction. When a criminal defendant challenges the sufficiency of the evidence, this court "review[s] the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). It does "not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." 319 Kan. at 723. "A reviewing court need only look to the evidence in favor of the verdict to determine whether the essential elements of a charge are sustained." *State v. Barnes*, 320 Kan. 147, 177, 563 P.3d 1255 (2025)."It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

The gravest offense can rest entirely on sufficient circumstantial evidence, and that evidence does not have to rule out every other reasonable conclusion to sustain a conviction. *Barnes*, 320 Kan. at 177-78. However, "convictions based entirely upon circumstantial evidence '"can present a special challenge to the appellate court"' because '"the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances."'" *Zeiner*, 316 Kan. at 350 (quoting *State v. Williams*, 229 Kan. 646, 648-49, 630 P.2d 694 [1981]); *State v. Valdez*, 316 Kan. 1, 12, 512 P.3d 1125 (2022).

"In Kansas criminal proceedings, the State's burden is to prove the defendant's guilt beyond a reasonable doubt; to satisfy that burden, the State must "'*prove beyond a*

*reasonable doubt each required element of* [*the charged*] *crime*.'" *Miller v. State*, 298 Kan. 921, 930, 318 P.3d 155 (2014) (quoting K.S.A. 21-5108[a]).

*The Evidence Presented at Trial Was Sufficient*

The reckless driving statute, K.S.A. 2018 Supp. 8-1566(a), does not define what constitutes willful or wanton behavior. Our Supreme Court considered this issue in *Remmers*, noting that caselaw on this precise issue was limited. 278 Kan. at 600. In *Remmers*, the defendant ran a stop sign on a rural road and collided with a truck, and the defendant's conduct was solely the result of inattentiveness. The *Remmers* court drew from another Supreme Court decision, *State v. Huser*, 265 Kan. 228, 232-34, 959 P.2d 908 (1998), which touched on what constitutes reckless driving behavior in another context. The *Remmers* court quoted *Huser* stating: "'One's behavior is only reckless *if he or she realizes that his or her conduct creates imminent danger to another person but consciously and unjustifiably disregards the danger*.'" *Remmers*, 278 Kan. at 601.

To sustain Dobbs' reckless driving conviction, then, there must have been evidence—considered in the light most favorable to the State—proving beyond a reasonable doubt that Dobbs realized that his conduct created imminent danger to others and he consciously and unjustifiably disregarded that danger. See 278 Kan. at 601-02.

In *Remmers*, the court framed its analysis around the principle that mere inattentiveness is insufficient to support a finding of recklessness, specifically the defendant's requisite mental state of "conscious disregard" of risk. 278 Kan. at 600-02. Here, Dobbs focuses on what he argues was a lack of real, imminent danger and claims the circumstances of his case presented no risk—and without a risk that he consciously disregarded, the mens rea element of reckless driving cannot be satisfied. He emphasizes not that he acted carefully or responsibly per se, but that the circumstances did not present any actual risk. In other words, he maintains that speeding through empty alleys,

10

even if technically illegal, does not satisfy the statutory definition of reckless driving when no persons or property were at risk.

To define a willful or wanton disregard for the safety of other people or property, the *Remmers* court drew from a South Dakota case to distinguish reckless conduct from negligent conduct:

> "'"[R]ecklessness requires more than ordinary negligent conduct. Evidence of carelessness, inadvertence or other similar behavior is insufficient to sustain a conviction where reckless conduct is required.' [Citation omitted.] The focus is on the state of mind of the individual, and whether his conduct is perceived as negligent or reckless depends upon his awareness of the risk his behavior creates[.]
>
> "'. . . "The difference between the terms 'recklessly' and 'negligently,' as usually defined, is one of kind, rather than of degree. Each actor creates a risk of harm. The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it." . . . "It is the concept of conscious disregard that distinguishes recklessness from negligence. The negligent actor fails to perceive a risk that he ought to perceive. The reckless actor perceives or is conscious of the risk, but disregards it." [Citation omitted.]'" *Remmers*, 278 Kan. at 601-02 (citing *State v. Larson*, 582 N.W.2d 15, 18 [S.D. 1998]).

Here, Dobbs was most likely familiar with the town and the area. Detective Stuart testified he knew Dobbs, and that Dobbs had been incarcerated in Atchison before. Additionally, Dobbs shared children with Downing, who testified that she was made aware that her vehicle was found in Atchison. His familiarity supports the inference that he would know the ordinary traffic conditions and that his driving choices were made with awareness of the actual environment, not a hypothetical one.

To evaluate the risk present at the time of the crime, Dobbs relies on *Remmers* and *Huser*, arguing that there is no statutory or caselaw authority establishing that speeding, failure to yield, or any other traffic offense alone constitutes reckless driving, and our

11

appellate courts have held that the mere commission of a traffic offense does not amount to recklessness.

In *Remmers*, the court emphasized the absence of speeding, swerving, erratic driving, or leaving the scene, and contrasted those facts with a case where a driver sped through a construction zone with workers present and veered into a closed lane, showing conscious disregard for safety. The court concluded that the defendant's statement, combined with the lack of evidence of his mental state or aggravating factors, was insufficient to support a reckless driving conviction. 278 Kan. at 602; see also *State v. Krovvidi*, 274 Kan. 1059, 58 P.3d 687 (2002) (running a red light as a result of inattentiveness, standing alone, did not satisfy the element of material deviation from the standard of care required for vehicular homicide). Likewise, in *Huser*, 265 Kan. at 234, the court held that driving under the influence of alcohol does not, standing alone, amount to reckless behavior; and Dobbs argues if "driving under the influence does not, standing alone, amount to reckless behavior, then certainly speeding and failure to yield also do not."

The State cites *United States v. McIntosh*, 979 F. Supp. 1329, 1333 (D. Kan. 1997), solely for the proposition that actual carnage is not required for violating the statute. In *McIntosh*, the federal district court found sufficient direct and circumstantial evidence to sustain a conviction for reckless driving under K.S.A. 8-1566(a). 979 F. Supp. at 1334. The conduct occurred on Fort Riley, a federal military installation, placing the case in federal jurisdiction while still applying Kansas substantive law.

The *McIntosh* court relied on *State v. Brueninger*, 238 Kan. 429, 435, 710 P.2d 1325 (1985), in its analysis and determined that the testimony of the events established "'willful or wanton disregard for the safety of persons or property.'" *McIntosh*, 979 F. Supp. at 1333. The *McIntosh* court explained that a rational fact-finder could easily have concluded that there was sufficient direct and circumstantial evidence to sustain a

conviction for reckless driving under K.S.A. 8-1566(a). 979 F. Supp. at 1333. Testimony showed that McIntosh ran a stop sign, exceeded the speed limit by more than 20 miles per hour, and attempted to evade a police vehicle by weaving through traffic, forcing cars into the emergency lane while oncoming drivers swerved to avoid him. Accordingly, the evidence supported his conviction. The court noted that other drivers had to take evasive action for their own safety. 979 F. Supp. at 1333.

The court rejected McIntosh's claim that all his traffic infractions should not be considered, confirming it is appropriate to consider all facts and violations. 979 F. Supp. at 1333. It clarified that reckless driving depends on rule violations, including failure to stay on the right side of the road and maintain prudent speed, and that one may obey the speed limit yet drive recklessly "'constantly zigzagging from one side of the highway to the other thus endangering the lives and property of others.'" 979 F. Supp. at 1334 (quoting *State v. Walker*, 199 Kan. 508, 512, 430 P.2d 246 [1967]).

Another more current case in which reckless driving was considered was *State v. Berkstresser*, 316 Kan. 597, 607, 520 P.3d 718 (2022). In that case, our Supreme Court considered an instructional challenge while examining Berkstresser's reckless driving in affirming his felony conviction. Berkstresser's conduct included:

> "[failing] to timely signal his turn even though he stopped at the stop sign; [driving] across two residential front yards near multiple parked vehicles and a bystander; [failing] to stop or yield when leaving the residential driveway; [crossing] a fog line and center line; and [failing] to signal when turning into a third residential property." 316 Kan. at 607.

The *Berkstresser* court noted that although there were only a few moving vehicles that Berkstresser passed which yielded to police during the pursuit, the presence of other drivers on the roadway reinforced the evidence that the defendant's conduct imperiled the safety of those individuals and their vehicles. 316 Kan. at 607.

13

Most recently, our Supreme Court in *State v. Ervin*, 320 Kan. 287, 302, 566 P.3d 481 (2025) analyzed K.S.A. 8-1566(a) as the underlying inherently dangerous felony supporting a felony-murder conviction. Although the issue in *Ervin* was the causal link between Ervin's reckless driving and the death, the court examined Ervin's actions. Ervin drove at high speeds for several minutes while fleeing officers, staying on the same street. He drove in heavy traffic, ran over curbs, struck or damaged multiple vehicles, and ran a red light, showing no signs of slowing until collisions disabled his vehicle. Even then, he continued fleeing on foot. These actions—speeding, creating traffic hazards, causing property damage, running a red light, and continued flight—supported a finding of reckless driving and, when viewed in the light most favorable to the State, allowed a rational fact-finder to conclude beyond a reasonable doubt that Ervin committed felony murder. 320 Kan. at 303-04.

What is clear on our review of all these cases is that the facts of each are unique and must be examined within the context of each incident. In *State v. Makin*, 223 Kan. 743, 746, 576 P.2d 666 (1978), our Supreme Court struggled with the grey areas between a misdemeanor and felony, stating that "[i]n determining whether particular conduct is wanton, each case must stand on its own footing as applied to the facts involved," and "[p]recise statements of what constitutes wanton or gross negligence are impossible." 223 Kan. at 746.

Considering the evidence available to the court at Dobbs' trial, we conclude that while Dobbs' conduct in this case may not reach the level of the defendants' conduct in *McIntosh*—where he weaved through busy traffic—or *Ervin*—where the driver ran over curbs and struck vehicles—it is still easily distinguishable from the lesser conduct demonstrated in *Remmers* and *Huser*. In *Remmers*, the offending driver admitted to simply being inattentive and his only violation was running a single stop sign. In *Huser*, although the driver was intoxicated, that fact stood alone, as there was no other traffic

14

violation or irresponsible conduct shown, such as weaving, speeding, or failure to stop after the accident. Such is not the case here.

Although Dobbs' eluding the officer occurred in an alley where there was apparently little to no other traffic in the alley itself, he ignored his duty to yield at each intersection where traffic would reasonably be expected—a duty which was not contested at trial. Additionally, viewing the evidence in the light most favorable to the State, Dobbs was traveling well in excess of the 30 miles per hour speed limit and, according to the officer's testimony, up to twice the speed limit, going up to 50-60 miles per hour. Even if Detective Stuart could no longer see Dobbs' car to see what occurred at the 14th Street intersection, his testimony showed that the 16th Street intersection contained a retaining wall which reduced the visibility of oncoming traffic, reasonably increasing Dobbs' responsibility to yield at the intersection; yet he did not and continued driving at a speed which, within a two-block span, afforded him enough distance to evade the officer's view.

The State also relies, on appeal, on time of day—11:30 a.m.—claiming this shows that people would have been on their lunch breaks and thus traffic would have been increased. Although the time of day was established at trial, there was no discussion of how the time of day would lead to increased traffic, and so no evidence supports the conclusion the State urges us to reach. However, this is not fatal to our conclusion.

Dobbs focuses on the officer's uncertainty about the actions of another vehicle at the 15th Street intersection and, accordingly, a lack of evidence that other people—whether pedestrians or other vehicles—were present as he fled from the officer. But this is not dispositive of the issue of risk. In fact, the duty to yield at intersections presupposes there is a potential for risk because a driver approaching an uncontrolled intersection never knows when another driver could enter the same intersection. That is, a driver who

consciously fails to yield must then realize that his conduct creates imminent danger to another person but consciously and unjustifiably disregards that danger.

Moreover, the officer's testimony showed that Dobbs failed to yield at more than one intersection while driving at nearly twice the speed limit, without slowing, which significantly increases the likelihood that his failure was conscious and intentional, not merely chalked up to a single incident of inattentiveness. The officer's testimony also established that two of these intersections contained retaining walls which significantly impact a driver's view, increasing the level of risk. Again, even if the officer did not witness Dobbs' actions at the 14 Street intersection, the fact that he had evaded the officer's view at that point supports the reasonable conclusion that Dobbs did not slow down. And regardless of the actions of the vehicle encountered at 15th Street, the presence of the vehicle reinforced the evidence that the defendant's conduct imperiled the safety of others. *Berkstresser*, 316 Kan. at 607.

We are required to view the evidence in the light most favorable to the State. Doing so, we observe not just one single behavior indicating mere inattentive or negligent driving, but multiple facts are present which support the district court's finding of guilt.

Affirmed.