IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,682

STATE OF KANSAS,
*Appellee,*

v.

TY R. ZEINER,
*Appellant.*

SYLLABUS BY THE COURT

1.

A district court may modify or add clarifications to PIK instructions, even those which track statutory language, if the particular facts in a given case warrant such a change.

2.

Under K.S.A. 2021 Supp. 8-1567, the term "operate" is synonymous with "drive," which requires some movement of the vehicle. Consequently, an "attempt to operate" under the DUI statute means an attempt to move the vehicle.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 11, 2021. Appeal from Marion District Court; MARGARET F. WHITE, magistrate judge. Opinion filed August 26, 2022. Judgment of the Court of Appeals affirming the district court on the issue on review is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Kelly J. Trussell*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe L.L.C., of Topeka, argued the cause and was on the briefs for appellant.

*Natalie Chalmers*, assistant solicitor general, argued the cause, and *Derek Schmidt*, attorney general, was with her on the briefs for appellee.

The opinion of the court was delivered by

STEGALL, J.: Ty Zeiner was convicted of driving while under the influence (DUI) after he was found by Deputy Starkey asleep in the driver's seat of his SUV and parked alongside a gravel road. Because the district court committed a reversible error in the jury instructions by failing to properly define the word "operate" as used in K.S.A. 2021 Supp. 8-1567(a), we reverse his DUI conviction and remand the case for a new trial with proper jury instructions.

Around 3:15 a.m. on November 18, 2018, a person driving home in rural Marion County noticed a white SUV parked, with its headlights on and motor running, alongside the gravel road several miles east of the city of Marion. On this morning, the temperature was in the 20s, the wind was blowing about 15 mph, and it was spitting snow. Acting out of a general concern for safety, the person pulled alongside the SUV and observed the driver, Zeiner, asleep in the driver's seat. The person then called his father for advice, and the father called the local sheriff's office. Deputy Larry Starkey responded to the call and arrived at the scene at 3:33 a.m.

When Deputy Starkey arrived, the SUV's motor had been turned off, though the radio and headlights were still on. Deputy Starkey immediately recognized the sleeping driver as Zeiner. Deputy Starkey tapped on the SUV's window and woke Zeiner up. Zeiner was in the driver's seat. He was wearing no seatbelt, made no attempt to move, stop, or shift the vehicle, or take any other action that indicated he was attempting to control the movement or future movement of the SUV.

2

Zeiner fumbled with the door handle and opened it to talk to Deputy Starkey. Deputy Starkey immediately noticed a smell of alcohol on Zeiner's breath. Zeiner initially denied drinking any alcohol, then quickly amended his story to say that he had consumed a couple of drinks with dinner earlier that evening. Zeiner explained that around 6:30 the previous evening he had drank two beers at Radius Brewing in Emporia, then drove to Strong City to meet his friend, John Maddox, at Ad Astra Food and Drink. Maddox later testified that he could not remember if Zeiner drank alcohol at Ad Astra but said Zeiner did not appear intoxicated during the roughly hour-long time they were there together. We do not know what time Zeiner left Ad Astra or how much, if any, alcohol Zeiner consumed while with Maddox.

Zeiner explained that he had been driving home from Ad Astra when he began to feel very tired and he decided to pull over. Zeiner was only 3 miles from his house. Zeiner asked Deputy Starkey a few times if he could simply drive home and let Deputy Starkey follow him there to ensure he made it safely. Deputy Starkey said no. Zeiner then asked if he could start his SUV to run the heater because it was cold outside. Deputy Starkey obliged, provided Zeiner promised not to try to drive away.

Based on his past interactions with Zeiner, Deputy Starkey suspected Zeiner was intoxicated because he appeared unusually "slow" and had "glassy eyes." Deputy Starkey subsequently asked Zeiner to perform two field sobriety tests: the "walk and turn" test and the "one-leg stand" test. Because of the cold weather, Deputy Starkey asked Zeiner to perform the tests using his patrol truck as a shield from the wind. Zeiner was wearing only a dress jacket for warmth and hard-soled dress shoes during the tests, and he repeatedly complained about how cold he felt. Zeiner attempted the one-leg stand test four times and failed. During this test, Zeiner missed a number while counting, put his foot down, and generally had trouble maintaining balance. During the walk and turn test he was docked on the pivot-turn and did not walk heel-to-toe or in a true straight line.

After finishing the tests, Deputy Starkey arrested Zeiner and the pair moved into the cab of his patrol truck to talk. Zeiner agreed to allow Deputy Starkey to search his vehicle. Upon this search, Deputy Starkey found an unopened beer bottle in the console, an empty bottle of the same brand of beer on the passenger floorboard, and several matching bottlecaps on the floor of the SUV. Zeiner denied knowing that the empty bottle was in the truck, though he admitted he knew about the sealed bottle. Deputy Starkey did not search the area around the truck for additional bottles to match the caps found on the floorboard or ask Zeiner if he had been drinking the beer in the car.

Deputy Starkey then took Zeiner to the sheriff's office and administered three breath tests. The first test at 4:51 a.m. rendered no readable sample because Zeiner failed to blow into the machine properly. The second test at 5:24 a.m. rendered a deficient sample, still reading .134. The third test at 5:39 a.m. rendered another deficient sample which read .145.

In his official drug and alcohol incident report, Deputy Starkey did not check any of the boxes that state he had witnessed any unsafe operation or signs of impairment, including fumbling, repeating words, false information, bloodshot eyes, watery eyes, glazed eyes, droopy eyes, slowness to respond, slurred speech, hiccupping, excitability, indifference, use of profanity, insults, carefree attitude, acting cocky, combative, sleepy, abusive, or antagonistic. Rather, Deputy Starkey just stated that Zeiner was acting unusually slow based on Deputy Starkey's past interactions with Zeiner.

Upon this evidence, the State charged Zeiner with a second time DUI offense under K.S.A. 2021 Supp. 8-1567(a)(1) (breath-alcohol concentration of at least 0.08) and, in the alternative, K.S.A. 2021 Supp. 8-1567(a)(3) (incapable of safely driving due to intoxication). The State also charged him with transporting liquor in an open container.

K.S.A. 2021 Supp. 8-1567(a)(3) states that "[d]riving under the influence is operating or attempting to operate any vehicle within this state while: . . . under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." The parties below have disputed the meaning of the term "operate" in the statute throughout this case.

At trial, Zeiner properly objected to the jury instructions, arguing for an instruction that clearly defined "operate" as used in the statute to mean "drive." The trial judge denied this request and opted for the broader language as used in the PIK, although the trial judge specifically recognized during sentencing that this case raised a difficult and substantial instructional issue.

The jury found Zeiner guilty of both DUI charges and not guilty of transporting liquor in an open container. Zeiner appealed the DUI convictions, and the Court of Appeals reversed his conviction under K.S.A. 2021 Supp. 8-1567(a)(1) because the district court improperly admitted the partial breath test samples as evidence. *State v. Zeiner*, No. 122,682, 2021 WL 2386047, at *3 (Kan. App. 2021) (unpublished opinion). The State did not appeal that reversal to this court.

The Court of Appeals affirmed Zeiner's DUI conviction under K.S.A. 2021 Supp. 8-1567(a)(3). 2021 WL 2386047, at *5, 7. In upholding this conviction, the Court of Appeals held the jury instruction was erroneous but that the error was harmless:

> "[R]esolution of this case does not turn on whether Zeiner attempted to operate or drive his vehicle after he pulled over to the side of the road. Zeiner freely admitted that he drove his vehicle from Strong City to the place where Starkey found him. Because this evidence was undisputed, there is no reasonable probability that the district court's failure to define 'operate' as 'drive' affected the jury's verdict." 2021 WL 2386047, at *7.

5

The Court of Appeals also held that the evidence was sufficient to support the jury's guilty verdict on this count. We agree that the evidence was sufficient, but we find the instructional error is not harmless beyond a reasonable doubt.

DISCUSSION

Zeiner challenges both the sufficiency of the evidence and the lower court's ruling on harmless error. We examine each of these issues in turn.

*There was sufficient evidence presented at trial to convict Zeiner of a DUI under K.S.A. 2021 Supp. 8-1567(a)(3).*

"When a criminal defendant challenges the sufficiency of the evidence used to support a conviction, an appellate court looks at all the evidence 'in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' A reviewing court 'generally will "not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations."' [Citations omitted.]" *State v. Harris*, 310 Kan. 1026, 1030, 453 P.3d 1172 (2019).

A reviewing court need only look to the evidence in favor of the verdict to determine whether the essential elements of a charge are sustained. *State v. Rice*, 261 Kan. 567, 585-86, 932 P.2d 981 (1997). It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018); *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

When evaluating the type of evidence before the court, we often state that even the gravest offense can be based entirely on circumstantial evidence. *State v. Banks*, 306 Kan. 854, 858-59, 397 P.3d 1195 (2017). Sufficient circumstantial evidence does not

6

need to exclude every other reasonable conclusion to support a conviction. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

On the other hand, convictions based entirely upon circumstantial evidence "''can present a special challenge to the appellate court"' because "''the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances.'''" *State v. Williams*, 229 Kan. 646, 648-49, 630 P.2d 694 (1981) (quoting 1 Wharton's Criminal Evidence § 91, pp. 150-51 [13th ed. 1972])." *Banks*, 306 Kan. at 859.

In analyzing the events of the night of November 17 and early morning of November 18, 2018, we must consider two time frames. The first occurs when Zeiner admittedly drove from Ad Astra in Strong City to the location where he parked his SUV. The second occurs from the time he parked until Deputy Starkey arrived on the scene at 3:33 a.m. At least for purposes of this appeal, the parties do not really dispute two critical facts: (1) that Zeiner did drive his vehicle to where it was parked sometime during the night; and (2) the evidence was sufficient to show Zeiner was intoxicated when he was observed sleeping in his running and parked car and when Deputy Starkey arrived a few minutes later and found Zeiner asleep in the car, now not running, but with its lights and radio on. Absent from the record is any direct evidence of Zeiner being intoxicated when he left Ad Astra or when he was driving or how long Zeiner had been parked on the side of the road before being observed.

The State claims the evidence shows Zeiner was drunk before he parked his car, either from consuming alcohol in Strong City or in his vehicle while driving (or both). Zeiner, on the other hand, claims the evidence is just as consistent with the possibility that he was not drunk when driving, he was merely tired, so he parked the vehicle and then consumed alcohol, intending to drive home the next morning.

7

Even though there is no direct evidence to support the conclusion that Zeiner drove while intoxicated, there are several pieces of circumstantial evidence that, when viewed in the light most favorable to the prosecution, create a reasonable basis to conclude that Zeiner was drunk when he left Strong City. Those facts include that Zeiner admitted to drinking earlier in the evening, the last place he admitted to being was an establishment that served alcohol, he was found only 3 miles from his house, he was asleep in the driver's seat, he smelled like alcohol, there was evidence of alcohol being consumed in the vehicle, Zeiner failed two field sobriety tests, and Zeiner provided three deficient breath test samples—two hours after being arrested—which indicated that he was intoxicated. "Proof of driving does not require an eyewitness to the driving. It may be shown by circumstantial evidence." *State v. Fish*, 228 Kan. 204, 210, 612 P.2d 180 (1980). In our view, there was sufficient evidence for a jury to reasonably conclude Zeiner drove *while* intoxicated.

*The trial court committed reversible error by denying Zeiner's request to modify the PIK instruction to define or replace "operate" as "drive."*

Our standard of review is clear and well known:

> "(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in [*State v.*] *Ward*[, 292 Kan. 541, 565, 256 P.3d 801 (2011)]." *State v. Murrin*, 309 Kan. 385, 391, 435 P.3d 1126 (2019).

Zeiner properly objected to the jury instruction used at trial. The trial judge noted this objection in the record, and the State does not dispute the reviewability of this issue.

8

When a defendant properly objects to an instruction at trial, this court examines whether the instruction properly and fairly stated the law as applied to the facts and could not have reasonably misled the jury. In making this determination, appellate courts consider the instructions as a whole. *State v. Butler*, 307 Kan. 831, 843, 416 P.3d 116 (2018).

The jury instruction at issue here tracked both the statutory language of K.S.A. 2021 Supp. 8-1567(a)(3) and the language of the PIK instruction. This language required the jury to find that Zeiner operated or attempted to operate his vehicle while he was too intoxicated to safely drive.

During trial the State made several arguments that Zeiner was "operating" his vehicle by running the heater, radio, and lights of his SUV while parked. Furthermore, the testimony of Deputy Starkey added to the confusion:

> "[DEFENSE COUNSEL] From the point that you first saw the vehicle, what facts or information do you have in terms of what you saw, heard, felt, touch, that would lead you to believe that Mr. Zeiner, at that point, was attempting to operate the vehicle or to drive the vehicle?
>
> "[STARKEY] The lights were on, and the radio was playing.
>
> "[DEFENSE COUNSEL] Okay. *So you think the fact that the lights are on and the radio is playing suggests that Mr. Zeiner was attempting to drive the vehicle?*
>
> "[STARKEY] *No. But he was attempting to operate the vehicle.*
>
> "[DEFENSE COUNSEL] Okay. We'll get to that in jury instructions. Okay?
>
> "[STARKEY] Okay." (Emphases added.)

Expanding the scope of the relevant timeframe for intoxication to include the time *after* Zeiner parked his vehicle would obviously strengthen the State's case immensely. But it would not be a correct statement of the law. *State v. Darrow*, 304 Kan. 710, Syl. ¶ 1, 374 P.3d 673 (2016) ("[T]he term 'operate' is synonymous with 'drive,' which requires some movement of the vehicle. Consequently, an 'attempt to operate' under the DUI statute means an attempt to move the vehicle.").

For this precise reason, the Court of Appeals correctly held that by failing to clearly define the term "operate" in the jury instructions to mean "drive" the district court committed instructional error—that is, the instruction requested by Zeiner was both legally and factually appropriate and should have been given.

We recognize that in most circumstances, this court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *Butler*, 307 Kan. at 847. PIK instructions should generally be the starting point in the preparation of any set of jury instructions. However, a district court may modify or add clarifications to PIK instructions if the particular facts in a given case warrant such a change. *State v. Dixon*, 289 Kan. 46, Syl. ¶ 10, 209 P.3d 675 (2009).

The State's petition for review only glancingly challenges the Court of Appeals' error finding. The State focuses on the fact that Zeiner's requested instruction did not include language about attempt. And while we certainly agree with the State that instructional language defining "attempting to operate" as an "attempt to drive" would be appropriate, it does not follow that the district court was free to not give the necessary instruction at all. We agree with the Court of Appeals. This was error.

10

The only remaining issue is whether that error was harmless.

"'[B]efore a Kansas court can declare an error harmless it must determine the error did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome. The degree of certainty by which the court must be persuaded that the error did not affect the outcome of the trial will vary depending on whether the error implicates a right guaranteed by the United States Constitution. If it does, a Kansas court must be persuaded beyond a *reasonable doubt* that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict. If a right guaranteed by the United States Constitution is not implicated, a Kansas court must be persuaded that there is no *reasonable probability* that the error will or did affect the outcome of the trial.'" (Emphases added.) *State v. Plummer*, 295 Kan. 156, 162-63, 283 P.3d 202 (2012).

Given the unique facts of this case and the potential confusion created by both the prosecutor's statements and the trial court's failure to provide the jury with the legally appropriate and precise definition of "operate," we are not convinced beyond a reasonable doubt that the jury convicted Zeiner based on a belief that he actually drove his vehicle while intoxicated after leaving Strong City, or whether it believed he was illegally "operating" his vehicle while parked on the side of the road. Given this, we do not have the necessary confidence the jury would have reached the same result had it been properly instructed. Zeiner's conviction must be reversed.

We reverse Zeiner's conviction under K.S.A. 2021 Supp. 8-1567(a)(3) and remand the case for a new trial on that charge with proper jury instructions.

Judgment of the Court of Appeals affirming the district court on the issue on review is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

11