NOT DESIGNATED FOR PUBLICATION

No. 127,497

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

COREY T. ROBINSON II,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Submitted without oral argument. Opinion filed April 24, 2026. Affirmed in part, vacated in part, and remanded with directions.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Carolyn A. Smith*, assistant deputy district attorney, *Michael Kagay*, district attorney, and *Kris. W. Kobach*, attorney general, for appellee.


Before BRUNS, P.J., SCHROEDER and ISHERWOOD, JJ.


ISHERWOOD, J.: Corey T. Robinson II appeals after a jury convicted him of two counts of aggravated battery, aggravated child endangerment, and several traffic infractions. On appeal, Robinson contends there was insufficient evidence to prove he was the driver of the vehicle involved in the incident giving rise to the charges against him. Robinson also contends that the district court failed to adequately inquire about his financial situation before ordering him to pay certain fees imposed by the district court at sentencing. Based on our review of the record, we affirm in part, vacate in part, and remand with directions.

1

FACTS

On the night of October 28, 2021, Deputy Dustin Zahn of the Shawnee County Sheriff's Department was waiting at a stop light at Huntoon and Topeka Boulevard when another vehicle pulled up behind him with its high beam headlights on. Deputy Zahn changed lanes so the vehicle could pass. But the vehicle switched lanes and remained behind the deputy. So, Deputy Zahn briefly pulled onto a side street to allow the vehicle—which was identified as a white Pontiac G6—to pass. Then, the deputy pulled back onto Topeka Boulevard and caught up to the Pontiac as it continued to travel south.

After Deputy Zahn saw the Pontiac turn onto 17th street heading west, the deputy continued to follow the vehicle. The deputy activated the patrol vehicle's emergency equipment in an attempt to pull the driver of the Pontiac over for improper use of high beam headlights. Instead of stopping, the Pontiac began to speed away traveling between 60 and 70 miles per hour. Believing the situation to be hazardous, Deputy Zahn deactivated his emergency equipment but continued to follow the Pontiac from a distance.

While continuing to drive west on 17th street, Deputy Zahn saw the Pontiac cross into the opposite lane of traffic. When it reached the intersection of 17th and Washburn, the stoplight was red. Nevertheless, the Pontiac entered the intersection, collided with another vehicle, and then crashed into a tree before coming to rest. Deputy Zahn—who never lost sight of the Pontiac—approached the vehicle. In doing so, he noticed the passenger side door was open and that a teenage girl—later identified as Y.G.—was lying injured on the ground.

On the driver's side of the Pontiac, Deputy Zahn's view was obstructed because of tree branches and foliage that had fallen as a result of the crash. However, the deputy heard a rustling sound and noticed movement. He also noticed that some of the branches

2

were sticking into the driver's side door, as though the door had been opened and then closed on the foliage. Deputy Zahn then saw a man—later identified as Robinson—come out of the foliage on the driver's side near the back of the Pontiac.

Deputy Zahn then saw Robinson lying on the ground. The deputy did not observe anyone other than Robinson and Y.G. at the crash site, nor did he see anyone else getting out of or moving away from the Pontiac.

Shortly after the crash, additional law enforcement officers and first responders arrived to assist at the scene. At one point, Robinson asked for something to wipe one of his hands off so that it did not get infected. When asked if there was something in the Pontiac he could use, Robinson responded: "There ain't shit in the car." Moreover, Topeka Police Officer Matthew Shavey asked Robinson if he and Y.G. had been the only people in the Pontiac, and Robinson responded, "Yeah." Deputy Zahn also asked Robinson what happened, and he responded: "They swerved and I kept going."

Deputy Melissa Evans arrived at the scene to take photographs of the vehicles and crash site. She also took photos of the exterior and interior of the Pontiac that were later admitted into evidence at trial. One of the photographs showed the tree branches and foliage coming through the driver's door. Deputy Evans testified that this indicated that the door was not totally shut. She also testified that neither of the back doors showed any sign of being opened.

Deputy Evans also photographed the injuries suffered by those involved in the collision while they were hospitalized. Y.G. suffered a laceration on her left eyebrow, injury to her right hand, and a fractured ankle. In addition, the driver of the other vehicle involved in the accident—Ricky Darling—suffered significant head injuries including a laceration on the back of his head. When Deputy Evans attempted to photograph Robinson's injuries, he attempted to cover his face with his arm and his shirt to avoid

3

being photographed. Still, Deputy Evans was able to get a photo of his face as well as his injuries.

The State charged Robinson with two counts of aggravated battery, aggravated endangering a child, reckless driving, failing to stop for an emergency vehicle, driving without a license, and failing to dim his headlights. The district court held a jury trial that commenced on April 24, 2023. After the State closed its presentation of evidence, Robinson moved for a judgment as a matter of law. The district court denied the motion on the grounds that a reasonable fact-finder could determine that Robinson was guilty of the crimes charged beyond a reasonable doubt. After deliberation, the jury returned a guilty verdict on all of the charges.

At sentencing, the district court determined that Robinson had a criminal history score of A. Prior to sentencing, Robinson filed a motion for a dispositional departure to probation. The district court denied Robinson's motion and sentenced him to a controlling term of 136 months in prison. Likewise, the district court ordered Robinson to pay certain fines, fees, and costs including a $100 Board of Indigent Defense Services (BIDS) application fee and BIDS attorney fees in a reduced amount of $1,000. For the time he is in custody, Robinson was ordered to pay $3 a month. Upon his release from prison, he is to pay $50 a month.

Thereafter, Robinson filed a timely notice of appeal.

ANALYSIS

*Sufficiency of the Evidence*

On appeal, Robinson first contends that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was the driver of the Pontiac

4

involved in the charged incident. In response, the State contends that it presented sufficient evidence upon which the jury could determine beyond a reasonable doubt that Robinson was the driver of the Pontiac. Based on our review of the record on appeal, we agree with the State.

"When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). In reviewing the record to determine whether there is sufficient evidence to support a criminal conviction, "[w]e do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." 319 Kan. at 723. To the extent that resolution of these issues requires statutory interpretation, our review is unlimited. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

"A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." *State v. Brazzle*, 311 Kan. 754, 767, 466 P.3d 1195 (2020) (citing *State v. Rizal*, 310 Kan. 199, 209-10, 445 P.3d 734 [2019]). Only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt will a guilty verdict be reversed. *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

Here, the State presented the testimony of Deputy Zahn regarding the events that occurred on the night of the accident from the time he first observed the Pontiac at the intersection of Huntoon and Topeka Boulevard until it struck another vehicle as well as a tree near the intersection of 17th and Washburn. Deputy Zahn testified that he did not see anyone else leaving the scene after the Pontiac crashed into the tree. Likewise, the deputy testified that he saw Robinson lying on the ground near the driver's side of the car and found Y.G. lying injured on the ground by the front passenger door.

5

Deputy Zahn also testified regarding his observation that the driver's door appeared to have been opened and shut after the crash as tree branches and foliage could be seen sticking into the doorframe. Additionally, photos were admitted into evidence that depicted the foliage sticking into the driver's door of the Pontiac. Moreover, Deputy Evans testified that the back doors of the Pontiac did not show any sign of having been opened following the crash.

Likewise, dash cam and body cam footage was shown to the jury at trial. In the videos, Robinson can be seen coming out of the branches and foliage on the driver's side of the Pontiac. Furthermore, there is evidence in the record that Robinson admitted to law enforcement officers at the scene that he and Y.G. had been the only two people in the Pontiac. In addition to other evidence that Robinson was the driver, Deputy Zahn testified that when he asked Robinson about what happened, he responded: "They swerved and I kept going."

Viewing this evidence—together with all reasonable inferences that can be drawn from such evidence—in the light most favorable to the State, we find that sufficient evidence was presented at trial upon which the jury could conclude beyond a reasonable doubt that Robinson was the driver of the Pontiac during the incident that led to the charges of conviction. Accordingly, we affirm Robinson's convictions.

*BIDS Application and Attorney Fees*

Robinson also contends that the district court erred in failing to consider his financial resources when it ordered him to pay $1,000 in BIDS attorney fees and a $100 BIDS application fee. He argues that although the district court indicated that it was "aware of" several factors that would likely impact his ability to pay, it failed to conduct a meaningful inquiry into his financial resources or the burden the fees would impose upon him. Because this issue involves the district court's compliance with the Kansas statutes

6

and caselaw, our review is unlimited. *State v. Buck-Schrag*, 312 Kan. 540, 555, 477 P.3d 1013 (2020).

The BIDS application fee is governed by K.S.A. 22-4529, which provides that "[a]ny defendant entitled to counsel . . . shall pay an application fee in the amount of $100 to the clerk of the district court." As our Supreme Court has recognized, the BIDS application fee does not fall within "the category of defense services" because it is a cost incurred by a defendant upon applying for the appointment of defense counsel and is assessed before the services have been rendered. *State v. Hawkins*, 285 Kan. 842, 851, 176 P.3d 174 (2008). When defendants request court-appointed defense counsel, they are responsible for paying the application fee and for providing financial information to the district court in order to determine their eligibility. *State v. Phillips*, 289 Kan. 28, 37, 210 P.3d 93 (2009).

Significantly, if the application fee "remains unpaid at sentencing, the district court may include the unpaid fee in its sentencing order without additional findings." *Hawkins*, 285 Kan. at 853. Here, the $100 BIDS application fee was assessed when Robinson applied for appointment of defense counsel and assessed again when new counsel was appointed. There is nothing in the record to suggest that Robinson paid the application fee prior to sentencing, nor has he argued that he has done so in this appeal. Hence, we find that the district court properly assessed the $100 BIDS application fee at sentencing, and it was not required to make any further findings on the record.

Turning to the BIDS attorney fees, we find that K.S.A. 22-4513(b) requires that "[i]n determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." As our Supreme Court has found, a district court is required to "explicitly consider on the record the nature of the burden such payment would impose on the defendant." *State v. Anderson*, 318 Kan. 425, 427-28, 543 P.3d

7

1120 (2024). Further, the "court must state on the record how those factors weigh in the court's decision." *State v. Huggins*, 319 Kan. 358, 376, 554 P.3d 661 (2024).

Although we do not question the reasonableness of the district court's decision, we find that the limited inquiry made on the record falls short of the explicit consideration that our Supreme Court requires when ordering a defendant to pay BIDS attorney fees. As a result, we find that the district court failed to comply with K.S.A. 22-4513(b) before ordering Robinson to pay BIDS attorney fees. Under these circumstances, we find the appropriate remedy is to vacate the assessment of BIDS attorney fees and remand this matter for reconsideration of those fees based on the factors set forth in K.S.A. 22-4513(a).

We, therefore, affirm Robinson's convictions, affirm the assessment of the BIDS application fee, vacate the assessment of the BIDS attorney fees, and remand the question of attorney fees to the district court for further consideration.

Affirmed in part, vacated in part, and remanded with directions.