NOT DESIGNATED FOR PUBLICATION

No. 127,410

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RANDALL S. GEORGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Submitted without oral argument. Opinion filed April 24, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., ARNOLD-BURGER and SCHROEDER, JJ.

PER CURIAM:  Randall S. George intentionally fled from the police to get them to follow him to his house to help with a gas leak. He now timely appeals from his conviction and sentence for felony fleeing and eluding law enforcement. On appeal, he presents multiple arguments challenging his conviction. After careful review of the record and his arguments, we find no reversible error. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Officer Tyler Kaus of the Wichita Police Department was near the end of his shift in the early morning hours of February 8, 2020. Kaus was fueling his patrol car outside a police substation when he observed a white van, driven by George, brake hard and screech as it stopped. The van then entered the parking lot of the police substation. George got out of the van and approached the officers' entrance door at the substation, which was locked. George began yanking on the door to no avail. Kaus approached George to see if he needed help, but George shouted something unintelligible, got in his van, and drove away.

Kaus radioed other officers in the area to notify them of a suspicious vehicle that might be driving erratically. Officers Timothy Wescott and Nick Jones were riding in their marked patrol vehicle when they observed George's van stopped on Newell Street between Flora and Elder. Wescott turned onto Newell from Elder, and the officers activated the red and blue emergency lights on their patrol car. George accelerated away from the officers. In doing so, he failed to stop at posted stop signs at the intersections of Newell and Elder, Newell and Doris, and Newell and Clara. George was also driving in excess of 40 miles per hour in a 30-mile-per-hour zone. When George failed to stop at the first stop sign, Wescott activated the sirens on his patrol car. Eventually, George turned into a driveway without using his turn signal and hit the corner of the house as he attempted to drive between the house and a detached garage. This resulted in damage to the house and the gas pipe entering the house.

The State charged George—among other counts—with alternative counts of felony fleeing and eluding for being in a motor vehicle accident during a police pursuit under K.S.A. 2019 Supp. 8-1568(b)(1)(D) (Count 1), or committing five or more moving violations during a police pursuit under K.S.A. 2019 Supp. 8-1568(b)(1)(E) (Count 2). A jury convicted him of both counts. The district court sentenced George to 13 months'

imprisonment for felony fleeing and eluding, noting the alternative charges merged into a single conviction under Count 1—being in a motor vehicle accident during the course of a police pursuit. And the journal entry of sentencing reflects George was sentenced only for his conviction under Count 1.

ANALYSIS

*Sufficient Evidence Supports George's Conviction*

George first argues the State failed to present sufficient evidence to convict him of felony fleeing and eluding under Count 2. Specifically, he asserts the officers had not begun pursuing him when he failed to stop at the intersection of Newell and Elder. However, he does not challenge the sufficiency of the evidence on the alternative theory of liability under Count 1—he was involved in a motor vehicle accident during the pursuit—based on the fact he struck and damaged the house. An issue not briefed is deemed waived and abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). We could very well end our analysis here, especially because George's alternative convictions merged into a single conviction under Count 1 and he was sentenced only for that count. However, out of an abundance of caution when viewed under the applicable standard of review, the evidence also supported George's conviction under Count 2 based on five or more moving violations.

> "When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

3

"It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

George does not contest the evidence that he was speeding, failed to stop at two other stop signs, and failed to use a turn signal when he turned into the driveway. Rather, he concedes there were four subsequent moving violations. He only argues the police pursuit had not begun when he failed to stop at Newell and Elder.

George's argument largely ignores our standard of review. We view the evidence in the light most favorable to the State. *Mendez*, 319 Kan. at 723. Here, the evidence presented reflects George failed to stop at three stop signs in addition to speeding and failing to signal his turn. In fact, George's own trial testimony is contrary to his argument on appeal. George testified he had a gas leak on his property and was trying to get the officers' attention and help. He admitted he saw Wescott and Jones' patrol car and "[took] off" after they activated their emergency lights to get the officers to "chase" him to his house. On direct examination, George testified: "I did end up running, I think, two or three stop signs 'cause it's only two blocks. It's one, two—it would have been three," and these were at "Elder, Doris, and Clara." He again admitted to doing so on cross-examination. This is consistent with Wescott and Jones' accounts of the pursuit. Viewed in the light most favorable to the State, sufficient evidence supports George's conviction under the alternative charge in Count 2.

*No Reversible Jury Instruction Error*

George raises two claims of jury instruction error. First, he asserts the district court erred in failing to instruct the jury on the lesser included offense of misdemeanor fleeing and eluding. Second, he argues the district court erred in instructing the jury on both theories of felony fleeing and eluding because the jury instructions did not properly

4

convey he had to commit five or more moving violations or be involved in an accident during the pursuit.

> "When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

"At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record." 320 Kan. at 242. "In determining whether an instruction was factually appropriate, [courts] must determine whether there was sufficient evidence, viewed in the light most favorable to [the defendant or] the requesting party, that would have supported the instruction." *Mendez*, 319 Kan. at 727.

"Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024). When a party fails to object to a jury instruction before the instructions are submitted to the jury, we review the instruction to determine if it was clearly erroneous. K.S.A. 22-3414(3). "For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given." *Mendez*, 319 Kan. at 727. George, as the party claiming clear error, "has the burden to show both error and prejudice." See 319 Kan. at 727-28.

George admits he did not request a lesser included offense instruction on misdemeanor fleeing and eluding and did not object to the district court's instructions on

felony fleeing and eluding. Therefore, we review both claims under the clear error standard.

*The lesser included offense instruction was proper.*

The parties agree an instruction on the lesser included offense of misdemeanor fleeing and eluding would have been legally and factually appropriate. Indeed, such an instruction would have been appropriate and should have been given because the evidence supported the greater offense of felony fleeing and eluding and the elements required to prove the felony charge would satisfy the elements needed to prove a misdemeanor charge. See *State v. Berkstresser*, 316 Kan. 597, 603, 520 P.3d 718 (2022). However, George fails to meet his burden to convince us the failure to give the instruction amounted to clear error.

To establish clear error, George must firmly convince us that giving the instruction would have changed the jury's verdict. See *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). We are unpersuaded a lesser included offense instruction would have changed the jury's verdict. The evidence reflected that George committed five or more moving violations during the chase and, at the end of the chase, he caused an accident by striking the corner of his house with his van.

According to George's own version of the events, he accelerated away from the officers once he saw their emergency lights activated because he wanted the officers to follow him to his house. George admitted he ran three stop signs, did not use a turn signal, and did not contest the allegation that he was speeding. He also admitted he hit the corner of the house while trying to drive between the house and a detached garage.

Based on this evidence, we are not firmly convinced the jury would have convicted George of misdemeanor fleeing and eluding rather than either or both felony

charges. The district court's failure to give an instruction on the lesser included offense of misdemeanor fleeing and eluding was error, but it was not clearly erroneous.

*The felony fleeing and eluding instructions were proper.*

George finally argues the district court erred in instructing the jury on Counts 1 and 2, asserting jury instructions 4 (Count 1) and 5 (Count 2) were legally inappropriate and confusing. Specifically, he argues the instructions did not properly convey that he had to be involved in a motor vehicle accident or commit five or more moving violations *during* a police chase.

The jury instruction on Count 1 read:

"Instruction 4. The defendant is charged with fleeing or attempting to elude a police officer. The defendant pleads not guilty. To establish this charge each of the following claims must be proved:

"1. The defendant was driving a motor vehicle.

"2. The defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop.

"3. The defendant willfully failed or refused to bring the motor vehicle to a stop for, or otherwise fled or attempted to elude, a pursuing police vehicle.

"4. The police officer's vehicle from which the signal to stop was given was appropriately marked showing it to be an official police vehicle.

"5. The defendant was involved in a motor vehicle accident.

"6. This act occurred on or about the 8th day of February, 2020, in Sedgwick County, Kansas."

And the jury instruction on Count 2 was:

"Instruction 5. The defendant is charged with fleeing or attempting to elude a police officer. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. The defendant was driving a motor vehicle.

"2. The defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop.

"3. The defendant willfully failed or refused to bring the motor vehicle to a stop for, or otherwise fled or attempted to elude, a pursuing police vehicle.

"4. The police officer's vehicle from which the signal to stop was given was appropriately marked showing it to be an official police vehicle.

"5. The defendant committed five or more moving violations.

"6. This act occurred on or about the 8th day of February, 2020, in Sedgwick County, Kansas."

George argues the fifth elements of Counts 1 and 2 should have specified the motor vehicle accident or moving violations, respectively, had to occur during the police chase. He asserts that simply mentioning a "'pursuing police vehicle'" in the third element does not properly convey this point. George acknowledges another panel of our court rejected a similar argument in *State v. Deere*, No. 123,259, 2022 WL 1436382 (Kan. App. 2022) (unpublished opinion), but asserts *Deere* was wrongly decided. We disagree. The reasoning in *Deere* is sound, and we follow it here. See 2022 WL 1436382, at *6. Jury instructions should be construed as a whole. *Hollins*, 320 Kan. at 244. Here, a common-sense reading of jury instructions 4 and 5 indicated the jury had to find either the motor vehicle accident or at least five moving violations, respectively, occurred during the police chase.

Because we observe no clear error in the instructions, we need not decide whether they were clearly erroneous. However, even if we assumed they were erroneous, we would not find clear error. As previously discussed, the evidence showed the accident and multiple moving violations occurred during a police chase. We are not convinced the jury

8

would have reached a different verdict if the district court had modified jury instructions 4 and 5 as George now suggests.

Affirmed.